638 So.2d 39 (1994)
Patrick C. HANNON, Appellant,
v.
STATE of Florida, Appellee.
No. 79678.
Supreme Court of Florida.
June 2, 1994.
Rehearing Denied September 8, 1994.
*40 James Marion Moorman, Public Defender, and Robert F. Moeller, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Patrick C. Hannon appeals his conviction of two counts of first-degree murder and *41 corresponding sentences of death. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
Around Christmas 1990, Brandon Snider, a resident of Tampa, went to Indiana to visit relatives. While there, he went to the home of Toni Acker, a former girlfriend, and vandalized her bedroom. On January 9, 1991, Snider returned to Tampa.
On January 10, 1991, Hannon, Ron Richardson, and Jim Acker went to the apartment where Snider and Robert Carter lived. Snider opened the door and was immediately attacked by Acker, who is Toni Acker's brother. Acker stabbed Snider multiple times. When Acker was finished, Hannon cut Snider's throat. During the attack, Snider's screams drew the attention of his neighbors. They also drew the attention of Carter, who was upstairs. Hearing the screams, Carter came downstairs and saw what was happening. He then went back upstairs and hid under his bed. Hannon and Acker followed Carter upstairs. Then Hannon shot Carter six times, killing him.
In July 1991, Hannon was brought to trial for the murders of Snider and Carter.[1] During the trial, Richardson reached an agreement with the State. He pled guilty to being an accessory after the fact and testified against Hannon. Hannon was found guilty of both murders. After a penalty proceeding, the jury unanimously recommended death. The trial court found the following aggravating circumstances applicable to both murders: (1) previous conviction of a violent felony (the contemporaneous killings); (2) the murders were committed during the commission of a burglary; and (3) the murders were heinous, atrocious, or cruel. § 921.141(5)(a), (d), and (h), Fla. Stat. (1991). As to Carter, the court found the additional aggravating factor that the murder was committed to avoid or prevent a lawful arrest. § 921.141(5)(e), Fla. Stat. (1991). In mitigation,[2] the court considered testimony from Hannon's mother and father that Hannon was not a violent person. Also, the court considered the fact that Hannon's original co-defendant, Richardson, was no longer facing the death penalty. The trial court found that the aggravating factors outweighed the mitigating factors and followed the jury's recommendation, imposing separate death sentences on Hannon for the murders of Snider and Carter.
As his first issue on appeal, Hannon claims that the trial court erred in striking prospective jurors Ling and Troxler for cause. The judge struck the jurors based on their answers to questions regarding their ability to impose the death penalty in an appropriate case. Hannon argues that the questioning did not show that Ling and Troxler were irrevocably committed to vote against the death penalty, and that their views on capital punishment would not substantially impair the performance of their jury duties.
The inability to be impartial about the death penalty is a valid reason to remove a prospective juror for cause. Johnson v. State, 608 So.2d 4, 8 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2366, 124 L.Ed.2d 273 (1993); Lara v. State, 464 So.2d 1173, 1178-79 (Fla. 1985). A prospective juror's views regarding capital punishment need not be made "unmistakably clear." Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). Despite a lack of clarity in the printed record, "there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.... [T]his is why deference must be paid to the trial judge who sees and hears the juror." Id. at 425-26, 105 S.Ct. at 853. To prevail on this issue, a defendant must show that the trial court, in excusing the prospective juror for cause, abused its discretion. See Johnson, 608 So.2d at 8; Mitchell v. State, 527 So.2d 179, 180-81 (Fla.), cert. denied, 488 U.S. 960, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988).
The record in the instant case supports the trial court's findings. During voir *42 dire, the prosecutor asked prospective juror Troxler, "In an appropriate case, do you think you could recommend the imposition of a death penalty?" Troxler answered, "No." While prospective juror Ling's answers were not as certain, he vacillated on the question of whether he could impose the death penalty, and he was clearly uncomfortable with the issue. The trial judge did not abuse his discretion in removing prospective jurors Ling and Troxler for cause.
Hannon next argues that the trial court erred in admitting certain statements by a prosecution witness, over defense objection. At trial, the State called Toni Acker as a witness. On cross examination, defense counsel showed Acker a composite drawing of Hannon, made by individuals who had seen Hannon flee the scene of the murders, and asked her if the composite resembled Hannon. Acker answered that it did not. On redirect, Acker denied having previously told Detective Mozell Linton that the composite resembled or looked like Hannon. The prosecutor then asked Acker the following questions and received the following responses:
Q. After you learned about the murder of Mr. Snider and Mr. Carter, did you have occasion to ask your brother, Jim Acker, about the possibility of Hannon's involvement?
A. No, I did not.
Q. At that interview that we've already talked about... did you tell Detective Mozell Linton that you had asked your brother Jim about Hannon possibly being involved?
A. No, I did not.
On recross, Acker stated that she told Detective Linton that Hannon would not have done something like that.
Subsequently, the State called Detective Linton to impeach Acker's testimony. On direct examination, the prosecutor asked Detective Linton the following questions, and received the following answers:
Q. Detective Linton, when you showed Toni Acker the composite photograph, what did she say about it?
A. She said after looking at it, she thought it looked like a person known to her as Patrick Hannon that lived in Tampa.
....
Q. Did she make any statement about having asked her brother, Jim, about Hannon possibly being involved?
A. Yes.
Q. And what did she say?
A. She told me that she had had a conversation with her brother over the phone, that she had called down to Tampa after thinking about this case and asked her brother, Jim Acker, if he thought Patrick Hannon had been involved in killing Brandon and Robbie.
Hannon contends that through the questioning of Acker the State prejudiced the defense by suggesting that Acker thought Hannon was involved in the murder. Hannon points out that Acker had no personal knowledge relating to who murdered Snider and Carter and the fact that Acker may have believed Hannon was involved was irrelevant. Hannon also argues that the testimony elicited from Detective Linton to impeach Acker aggravated the error in admitting her testimony. We disagree.
Acker's initial testimony regarding the composite and the conversation with Detective Linton was elicited by defense counsel. During the defense questioning, Acker stated that the composite did not look like Hannon. The State then asked whether she had previously told Detective Linton that the composite did, in fact, resemble Hannon. The testimony of Detective Linton, regarding Acker's statement that the composite looked like Hannon, was proper impeachment of Acker's testimony. § 90.608, Fla. Stat. (1991). Whether Acker had inquired of her brother concerning Hannon's involvement would ordinarily be irrelevant. However, in light of her efforts to exonerate Hannon, and her subsequent statement that he would not do anything like that, we cannot say that the trial judge erred in permitting the evidence to be introduced. Even if it could be said that any of Acker's impeachment was improper, this was only a minimal part of the entire trial, and the evidence of guilt was overwhelming. *43 Thus, if error occurred, it was harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
As his third issue on appeal, Hannon contends that the trial court erred in admitting into evidence the bloody shorts and shirt worn by Snider when he was murdered, and the testimony of Judith Bunker, a forensic consultant in the field of blood stain pattern analysis and crime scene reconstruction. Hannon argues that the evidence was irrelevant and prejudicial. In response, the State argues that the evidence was relevant and admissible, and that its probative value clearly outweighed any possible prejudice.
Bunker's testimony relating to the blood splatter evidence was presented to assist the jury in understanding the facts before it. The clothing was admitted into evidence and used by Bunker to explain how the murders occurred. The splatter evidence was consistent and tied in with other evidence detailing the manner of commission of the crime. See Castro v. State, 547 So.2d 111, 114 (Fla. 1989). On appeal, a trial court's ruling regarding the admissibility of evidence will not be disturbed absent an abuse of discretion. Blanco v. State, 452 So.2d 520, 523 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). Here, there was no such abuse.
Hannon next argues that the instruction given to the jury on the heinous, atrocious, or cruel aggravating circumstance was unconstitutionally vague. The instruction given in this case was identical to the one declared invalid in Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). However, while Hannon's counsel objected to the applicability of the heinous, atrocious, or cruel aggravating factor in this case, he made no objection to the wording of the instruction. Therefore, this claim is procedurally barred. Ponticelli v. State, 618 So.2d 154 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 352, 126 L.Ed.2d 316 (1993); Rose v. State, 617 So.2d 291, 297-98 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 279, 126 L.Ed.2d 230 (1993). Even if the claim had been preserved, we are convinced beyond a reasonable doubt that the failure to give an adequate instruction on that aggravating factor was harmless error.
Hannon also argues that the facts of the instant case do not support the finding of heinous, atrocious, or cruel. We disagree. The record reflects that Brandon Snider was brutally stabbed numerous times by Hannon and Jim Acker. At one point during the attack, Snider called to his roommate, "Call 911  my guts are hanging out." At that point, Hannon grabbed Snider from behind and slit his throat. Snider's screams and cries for help could be heard throughout the apartment complex. This Court has consistently upheld findings of heinous, atrocious, or cruel under similar circumstances. Trotter v. State, 576 So.2d 691, 694 (Fla. 1990); Campbell v. State, 571 So.2d 415, 418 (Fla. 1990).
Regarding the murder of Robert Carter, Hannon points out that this Court rarely applies the heinous, atrocious, or cruel aggravator to shootings. See Lewis v. State, 398 So.2d 432, 438 (Fla. 1981). In the instant case, however, Carter witnessed his friend and roommate being savagely stabbed. When the attackers turned on Carter, he pled for his life as he retreated to an upstairs bedroom. There, he hid under a bed until Hannon entered the room, and fired six shots into the huddled, defenseless Carter. Under these circumstances, where the victim undoubtedly suffered great fear and terror prior to being murdered, the trial court did not err in finding Carter's murder to be heinous, atrocious, or cruel. Preston v. State, 607 So.2d 404, 409-10 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993).[3]
Hannon next argues that the evidence did not support the aggravating circumstance that the murder of Carter was *44 committed for the purpose of avoiding or preventing lawful arrest. When a murder victim is not a law enforcement officer, "[p]roof of the requisite intent to avoid arrest and detection must be very strong." Riley v. State, 366 So.2d 19, 22 (Fla. 1978). In the instant case, the record reflects that Hannon, Acker, and Richardson went to the home of Snider and Carter to kill Snider. The motive was the conflict between Snider and Jim Acker's sister. Carter was not a party to this conflict. Carter, however, lived with Snider, and witnessed Snider's murder. Carter knew, and could identify, Hannon and the others. After his arrest and incarceration, Hannon told a cellmate that one of the victims was a "real jerk," but that the other was a "pretty nice guy" who was just in the wrong place at the wrong time. In the course of discussing another cellmate's crime, Hannon told him that he should not have left any witnesses. Clearly, the murder of Carter was ancillary to the primary purpose of obtaining revenge against Brandon Snider. See Troedel v. State, 462 So.2d 392, 398 (Fla. 1984). The finding that Carter was murdered for the purpose of avoiding or preventing lawful arrest is fully supported by the record.
Finally, Hannon contends that his death sentence denies him equal justice because neither of his two accomplices were sentenced to death. However, a death sentence is not disproportionate when a less culpable codefendant receives a less severe punishment. Coleman v. State, 610 So.2d 1283, 1287 (Fla. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 321, 126 L.Ed.2d 267 (1993); Craig v. State, 510 So.2d 857, 870 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988). In the instant case, the record reflects that Hannon murdered both victims. Hannon delivered the fatal blow to Snider, slashing Snider's throat after Acker had stopped stabbing him. Also, it was Hannon who shot Carter. Clearly, Hannon is the most culpable of the three accomplices in this case, and the two death sentences are justified.
We reject the other claims raised by Hannon because they are without merit.[4] Accordingly, we affirm the two convictions for first-degree murder, and the corresponding sentences of death.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] Acker was tried in a separate proceeding, was convicted, and was sentenced to two life sentences.
[2] The court found no statutory mitigating circumstances.
[3] We reject Hannon's additional argument that Florida's heinous, atrocious, or cruel aggravating circumstance itself is unconstitutionally vague, is applied in an arbitrary and capricious manner, and does not genuinely narrow the class of persons eligible for the death penalty. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Lucas v. State, 613 So.2d 408, 410 (Fla. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 136, 126 L.Ed.2d 99 (1993).
[4] Hannon also claims that the facts do not support the prior violent felony aggravating factor, and that the sentencing order was insufficient.