PER CURIAM. Patrick Hannon, a prisoner under sentences of death with an active death warrant, appeals the circuit court’s orders denying his third and fourth - successive motions for postconviction relief filed , pursuant to Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the following reasons, we affirm the circuit court’s denial of both motions and deny his motions for stay of execution. FACTS AND PROCEDURAL HISTORY On direct - appeal, this Court fully set forth the underlying facts. Hannon v. State (Hannon I), 638 So.2d 39, 41 (Fla. 1994). Relevant to the instant proceeding, Hannon was found guilty of two counts of first-degree murder for the killings of Brandon Snider and Robert ’ Carter. Id. After a penalty phase, the jury returned two unanimous death sentences. Id. Hannon appealed, and we affirmed the convictions and sentences. Id. at 41-44. On February 21, 1995, the United States Supreme Court denied certiorari, Hannon v. Florida, 513 U.S. 1158, 115 S.Ct. 1118, 130 L.Ed.2d 1081 (1995), thus, Hannon’s case became final on that date. We affirmed the denial of Hannon’s initial motion for postconviction relief and denied his petition for writ of habeas corpus. Hannon v. State (Hannon II), 941 So.2d 1109, 1150 (Fla. 2006). During the pendency of his initial postconviction motion, Hannon filed an interlocutory appeal after the circuit court denied his motion to prohibit DNA testing, which this Court dismissed. Hannon v. State (Hannon III), 817 So.2d 847 (Fla. 2002) (Table). -Additionally, Hannon sought federal relief pursuant to a writ of habeas corpus, which was denied. Hannon v. Sec’y, Dep’t of Corr. (Hannon IV), 622 F.Supp.2d 1169 (M.D. Fla. 2007). The Eleventh Circuit Court of Appeals granted Hannon’s request for a certificate of appealability on one issue, but it denied relief. Hannon v. Sec’y, Dep’t of Corr. (Hannon V), 562 F.3d 1146 (11th Cir. 2009).[1] The postconviction court denied Han-non’s first successive motion for postcon-viction relief, which we affirmed. Hannon v. State (Hannon VI), 94 So.3d 502 (Fla. 2012). Again, the postconviction court denied Hannon’s second motion, for postcon-viction relief, and we affirmed. Hannon v. State (Hannon VII), SC15-2363, 2016 WL 3352780 (Fla. June 16, 2016). Hannon filed his third successive motion for postconviction relief—while the second motion was pending appeal—raising various Hurst claims. The circuit court held the third successive motion in abeyance pending the outcome of Hannon’s appeal in this Court on his second successive motion, which was decided on June 16, 2016. On August 4, 2016, the circuit court entered a stay on Hannon’s third successive motion, pending our decision on the retroactivity of Hurst v. Florida, — U.S. —, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016). Following our various opinions, the circuit court denied Hannon’s third successive motion without an evidentiary hearing. Hannon appealed, and we stayed the proceedings pending the resolution of Hitchcock v. State, 226 So.3d 216, 2017 WL 3431500 (Fla. Aug. 10, 2017), petition for cert. filed, No. 17-6180 (U.S. Sept. 29, 2017). When Hitchcock became final, we lifted the stay and issued an order to show cause why the denial of Hannon’s third successive motion for post-conviction relief should not be affirmed, On October 6,2017, Governor Rick Scott signed a death warrant for Hannon and set his execution for November 8, 2017. Han-non filed his fourth successive postconviction motion in the circuit court, raising three claims: (1) the lethal injection protocol is unconstitutional; (2) the Governor’s warrant signing procedure is unconstitutional; and (3) Hannon’s death sentences aré disproportionate compared to his code-fendants’ sentences. The circuit court denied Hannon’s claims without an evidentiary hearing.[2] These appeals follow. ANALYSIS Constitutionality of Lethal Injection Protocol Hannon presents various challenges that he asserts amount to a violation of his Florida constitutional and Eighth Amendment rights when considered together. The circuit court found that we recently approved the current injection protocol in Asay v. State (Asay VI), 224 So.3d 695, 700-02 (Fla. 2017); thus, the court correctly rejected that portion of Hannon’s claim. Further, the circuit court found that Han-non failed to establish his additional assertion that the three-drug protocol evaluated in conjunction with the Florida Department of Corrections’ (DOC) “veil of secrecy” demonstrates that the DOC is inconsistent with its protocol and concealing signs of consciousness. Hannon presented no new evidence that would require us to reconsider our recent approval of the three-drug protocol, therefore, no discussion of that portion of the claim is necessary. See id. As to Hannon’s “veil of secrecy” claim, the circuit court properly denied his challenge. The DOC is entitled to a presumption that it will properly perform its duties while carrying out an execution. Lightbourne v. McCollum, 969 So.2d 326, 343 (Fla. 2007); Provenzano v. State, 761 So.2d 1097, 1099 (Fla. 2000). Moreover, we have noted that our “role is not to micromanage the executive branch in fulfilling its own duties relating to executions.” Troy v. State, 57 So.3d 828, 840 (Fla. 2011) (quoting Lightbourne, 969 So.2d at 351). There is nothing before us sufficient to overcome the presumption that the DOC will comply with the protocol that we have approved regarding the necessary consciousness check. See Howell v. State, 133 So.3d 511, 522 (Fla. 2014); Valle v. State, 70 So.3d 530, 545 (Fla. 2011) (rejecting a similar, claim of “substitution of the drug, coupled with inadequate procedural safeguards and a cavalier attitude toward lethal injection” (emphasis in original)); Lightbourne, 969 So.2d at 352. In fact, one of the affidavits submitted by Hannon indicates that as recently as a few weeks ago, during Lambrix’s execution, the DOC officials conducted a proper consciousness check. See Correll v. State, 184 So.3d 478, 484 n.8 (Fla. 2015) (detailing, the consciousness check when the execution team mem: bers “yell the prisoner’s name, lift the prisoner by the shoulders .and shake him or her, flick the subject’s eyelids, and pinch the trapezius muscle”). The burden was on Hannon to overcome the presumption afforded to the DOC, and he failed to carry his. burden. See Muhammad v. State, 132 So.3d 176, 203 (Fla. 2013). Thus, this portion of his claim fails. Finally, we have consistently rejected Hannon’s challenge that the DOC should substitute the current three-drug protocol with a one-drug protocol. See Asay VI, 224 So.3d at 702; Muhammad, 132 So.3d at 196-97. Accordingly, even taking these claims together, the circuit court properly denied Hannon’s challenge. The Governor’s Warrant Signing Power Hannon challenges the power of the Governor to sign death warrants, which the circuit court properly denied. We have repeatedly and consistently denied these claims. E.g., Bolin v. State, 184 So.3d 492, 502-03 (Fla. 2015), cert. denied, — U.S. -, 136 S.Ct. 790, 193 L.Ed.2d 534 (2016); Mann v. State, 112 So.3d 1158, 1162-63 (Fla. 2013); Ferguson v. State, 101 So.3d 362, 366 (Fla. 2012); Gore v. State, 91 So.3d 769, 780 (Fla. 2012); Valle, 70 So.3d at 551-52. Hannon contends that we must revisit this settled point of law in light of Hurst, however, Hannon is mistaken. The narrowing function required by the Eighth Amendment, which we addressed in Hurst, has already been performed by the time that a defendant is warrant eligible. See Hurst v. State, 202 So.3d 40, 59-63 (Fla. 2016), cert. denied, — U.S. —, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017); Silvia v. State, 123 So.3d 1148, 2013 WL 5035694 *1 (Fla. 2013) (Table) (defining warrant eligible). Accordingly, the circuit court , correctly denied relief to Hannon on this claim. Proportionality Hannon contends that his sentence is disproportionate when compared to his codefendants’ sentences. The circuit court found that this claim was procedurally barred because it has been previously addressed on direct appeal and-is untimely. We agree. We rejected Hannon’s proportionality claims on direct appeal and ,in his initial postconviction motion. Hannon I, 638 So.2d at 44 (finding that “[c]learly, Hannon is the most culpable of the three accomplices in this case, and the two death sentences are justified”); Hannon II, 941 So.2d at 1145 (affirming the postconviction court’s denial of a similar claim couched in terms of newly discovered evidence' “because the instant case does not involve equally culpable codefendants”). Because we have addressed this claim on direct appeal and postcqnviction, it is both procedurally barred and without substantive merit. E.g., Lukehart v. State, 70 So.3d 503, 524 (Fla. 2011) ("Lukehart challenges this Court’s proportionality determination from the direct appeal, ... [t]his claim is procedurally barredlas it was raised and rejected on direct appeal.”); Allen v. State, 854 So.2d 1255, 1261-62 (Fla. 2003). Also, the claim is untimely. One of Hannon’s code-fendants, Charles Acker, was retried in 2001. Any claims relatéd to that retrial are well outside the one-year time limitation prescribed by Rule 3.851(d)(1). And the circuit court correctly found that Hannon failed to establish any of; the Rule 3.851(d)(2) exceptions to' the one-year limit. Because this claim is procedurally barred, we do not reach the merits of Hannon’s arguments. Likewise, Hannon raised claims regarding the testimony of an FBI analyst and blood spatter expert. We have twice rejected his claim regarding the FBI analyst, Hannon II, 941 So.2d at 1145-46; Hannon VII, 2016 WL 3352780 at *1, and once rejected the claim regarding' the blood spatter expert. Hannon II, 941 So.2d at 1121-24. Thus, those claims must fail as well. Contrary to the dissent’s assertion, the record is actually quite clear that the wound inflicted, to one victim’s neck by Hannon was the fatal wound. Instead of basing a proportionality determination on Hannon’s allegations ánd assertions, we rely on the record, which refuted the assertions. At Hannon’s trial and Acker’s retrial, the medical examiner, Dr. Diggs, testified about the neck wound. He opined that I the wounds inflicted by Acker could possibly be “potentially lethal”; whereas, the neck wound actually inflicted by Hannon was “certainly a lethal wound.” Furthermore, the wounds inflicted by Acker would not have killed Snider for at least some extended time period; whereas, the wound inflicted by Hannon caused Snider to drop immediately and die in less than thirty seconds.[3] This case is distinguishable from McCloud v. State, 208 So.3d 668 (Fla. 2016), where we held that death was disproportionate, noting that “the jury explicitly determined by special interrogatory that' McCloud was not the shooter” and that a “less culpable, non-triggerman defendant” cannot be sentenced to’ death when “the' more culpable, triggerman defendant” is sentenced'to a lesser sentence. Id. at 687-89. However, McCloud is inap-posite because the record here demonstrates that Hannon was more culpable than his codefendants. Not. only was Han-non the “triggerman” by shooting Carter, he was also the “buck-knife man” by slashing Snider’s throat to the' point of near decapitation. Our relative culpability analysis in Hannon I, 638 So.2d at 44, was not dependent on who had the motive to kill Snider; rather, it was based on the facts in record, which demonstrated that Hannon killed Snider and Carter. Although Hannon’s codefendants were culpable, Hannon was the person who slashed Snider’s throat and shot Carter six times; as such, it-is as true today as it was twenty-three years ago: Hannon was “the most culpable of the three accomplices in this case.” Id Accordingly, the circuit court properly denied this claim. Records Requests . Hannon challenges whether the circuit court abused its discretion in sustaining the State’s objections to disclosure of certain public records. The disputed records fall into three general categories: (1) information regarding the three-drug protocol and the State’s current supply; (2) records of the last eight executions along with records indicating personnel or undocumented protocol changes; and (3) records pertaining to the proportionality of Han-non’s sentences. We review rulings on public records requests pursuant to Florida Rule of Criminal Procedure 3.852 for abuse of discretion. Hill v. State, 921 So.2d 579, 584 (Fla. 2006). “Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court.” Parker v. State, 904 So.2d 370, 379 (Fla. 2005) (quoting State v. Coney, 845 So.2d 120, 137 (Fla. 2003)). Rule. 3.852 is “not intended to be a procedure authorizing a fishing expedition for records.” Sims v. State, 753 So.2d 66, 70 (Fla. 2000), For this reason, records requests under Rule 3.852(h) are limited to “persons and agencies who were the recipients of a public records request at the time the defendant began his or her postconviction odyssey,” id.; whereas, records requests under Rule 3.852(i) must “show how the requested records relate to a colorable claim for postconviction relief and good cause as to why the public records request was not made until after .the death warrant was signed.” Asay VI, 224 So.3d at 700 (quoting Tompkins v. State, 872 So.2d 230, 244 (Fla. 2003)). First, the circuit court properly denied Hannon’s records request regarding the three-drug protocol, including the sourcing, storage, and expiration dates of the State’s .supply of etomidate. The request at .issue was directed at the DOC and Florida Department of Law- Enforcement (FDLE) pursuant to Rule 3,852(i). We have specifically rejected similar claims in the past as “overbroad and burdensome”: Muhammad contends the circuit court abused its discretion in refusing to order -the DOC to disclose the manufacturers of the lethal injection drugs used in Florida executions, together with the lot numbers and expiration dates. No abuse of discretion has been shown. We have held that the source of the drugs used in lethal injection is of questionable relevance to a colorable Eighth Amendment claim. See Valle, 70 So.3d at 549. The same principle would apply to the drugs’ lot numbers and expiration dates. Moreover, this Court' will presume that the DOC will act in accordance with its protocol and carry out its duties properly. See, e.g., id. This same presumption would extend to' presume that the DOC will obtain viable versions of the drugs it intends to use and confirm before use that the drugs are still viable, as the .protocol requires. Muhammad, 132 So.3d at 203, 206. Moreover, in Walton v. State, 3 So.3d 1000 (Fla. 2009), this Court stated that production of records relating to lethal injection are “unlikely to lead to a colorable claim for relief [when] the challenge to the constitutionality of lethal injection as currently administered in Florida has been fully considered and rejected by the Court.” Id. at 1014. The current injection protocol was fully considered and approved of in Asay VI, 224 So.3d at 700-02. For these reasons, the circuit court did not abuse its discretion in denying Hannon’s request. Second, Hannon requested records for the last eight executions along with “unwritten changes” to the protocol. This request was made pursuant to Rule 3.852(i), and it was properly denied. As a practical matter, most of the requested records for previous executions were carried out using a different protocol, therefore, it is not likely that they relate to a colorable claim. Moreover, under our precedent, Hannon was not entitled to those records. In Valle, we held that records of the last five executions were “not related to a colorable Eighth Amendment claim.” 70 So.3d at 549. Moving onto the “unwritten changes” portion of Hannon’s challenge, he argues that the requested records are all related and necessary to his “veil of secrecy” claim. However, Hannon has the current protocol and possesses records regarding the current three-drug protocol disclosed as part of the Asay VI litigation. Thus, he has the records necessary to develop a colorable claim. Moreover, in Muhammad, we noted that records “requests related to actions of lethal injection personnel in past executions do not relate to a colorable claim concerning future executions because there is a presumption that members of the executive branch will perform their duties properly.” 132 So.3d at 203. Furthermore, Hannon fails to explain why he waited until the eve of execution to request these records. His “unwritten changes” and related “veil of secrecy” claims would be more compelling had Hannon been actively pursuing these records. Instead, Hannon waited until a death warrant was signed and requested these voluminous records despite the truncated' period for his postconviction motion. In the past, we have not condoned “eleventh hour attempts] to delay the execution” with records requests, and we will not begin now. See Sims, 753 So.2d at 70; see also Tompkins, 872 So.2d at 243-44. Thus, this portion of the claim was properly denied. ' Third, Hannon’s proportionality claim is procedurally barred, as addressed above. However, pertaining to his records request challenge, Hannon is in possession of the transcript from Acker’s 2001 retrial, which he filed with this Court. Considering Han-non’s claim, this is the record that Hannon would need in order to establish a color-able claim. Thus, the records request challenge is moot. In sum, Hannon failed to demonstrate his entitlement to the disputed records, accordingly, the circuit court properly denied relief. Hurst Claims In Hannon’s third successive postcon-viction motion, he raised various Hurst challenges.[4] The circuit court correctly rejected each claim in accordance with our precedent. Hannon’s case became final on February 21, 1995. We have consistently held that Hurst is not retroactive prior to June 24, 2002, the date that Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), was released. E.g., Lambrix v. State, 227 So.3d 112, 2017 WL 4320637 (Fla. Sept. 29, 2017), cert. denied, Nos. 17-6222, 17A375, — U.S. —, 138 S.Ct. 312, 199 L.Ed.2d 202, 2017 WL 4409398 (U.S. Oct. 5, 2017); Hitchcock, 226 So.3d 216; Asay v. State (Asay V), 210 So.3d 1, 22 (Fla. 2016), cert. denied, No. 16-9033, — U.S. —, 138 S.Ct. 41, 198 L.Ed.2d 769, 2017 WL 1807588 (U.S. Aug. 24, 2017). Hannon contends that he raises novel chapter 2017-1, Laws of Florida, and Eighth Amendment challenges and that we have not addressed those issues; yet, Hannon is mistaken because we have expressly rejected these claims. Lambrix, 227 So.3d 112 (rejecting chapter 2017-1 and Eighth Amendment claims under Hurst); Asay VI, 224 So.3d at 702-03 (rejecting chapter 2017-1 and Eighth Amendment claims as “not novel and [ ] previously rejected by this Court”); Hitchcock, 226 So.3d at 217 (denying Hurst relief despite the fact that Hitchcock raised Eighth Amendment claims). Hannon chooses to ignore our precedent because he disagrees with the retroactivity cutoff that we set in Asay V, however, that decision is final and has been impliedly approved by the United States Supreme Court, which denied certiorari review. See Asay v. Florida, No. 16-9033, — U.S. —, 138 S.Ct. 41, 198 L.Ed.2d 769, 2017 WL 1807588 (U.S. Aug. 24, 2017). Clearly, Hannon is not entitled to Hurst relief, thus, there is .no Hurst error to review for harmless error. Accordingly, the circuit court correctly denied Hannon’s third successive motion for postconviction relief. Potential Caldwell[5] Claims Hannon directs this Court to a dissent from the denial of certiorari in Truehill v. Florida, Nos. 16-9448, 17-5083, — U.S. -, 138 S.Ct. 3, 199 L.Ed.2d 272, 2017 WL 2463876 (U.S. Oct. 16, 2017), cert. denied, (Sotomayor, J., dissenting). That dissent criticizes this Court for failing to address Eighth Amendment claims under Caldwell. We need not reach that issue in this case, however, because Hannon does not specifically raise a Caldwell claim in either appeal. Hannon’s Eighth Amendment claim is essentially a challenge to the arbitrariness of our retroactivity decision in Asay V. Therefore, although Hannon cites Truehill for the proposition that certain Supreme Court Justices believe that we have not resolved various Eighth Amendment issues, he does not raise an independent Caldwell challenge here. As described above, the Eighth Amendment claim that Hannon raised has been answered by this Court in other opinions. The dissent asserts that Hannon raises a Caldwell claim in this Court. It is true that Hannon challenged his sentences under Caldwell in the circuit court, however, he did not raise that claim here. In his Response to Order to Show Cause, Hannon merely explained that he raised Caldwell claims in his initial postconviction motion,[6] Hannon II, 941 So.2d at 1144, and argued that Caldwell supports his claim of harmful error under Hurst. There is no error to review for harmful error, thus, that portion of his claim fails with the harmful error claim itself. CONCLUSION Based on the foregoing, we affirm the circuit court’s denial of Hannon’s third and fourth successive postconviction motions. Because we find that Hannon is not entitled to relief, we accordingly deny his motions for stay of execution. No oral argument is necessary and no rehearing will be entertained by this Court. The mandate shall issue immediately. It is so ordered. .. LABARGA, C.J., and LEWIS, POLSTON, and LAWSON, JJ., concur. CANADY, J., concurs in result. PARIENTE, J., dissents with an opinion. QUINCE, J., recused. . One of the issues litigated in Hannon’s initial posteonviction motion was counsel's failure to investigate and present mitigation. Hannon II, 941 So.2d at 1125-38. Most of the dissent is based on this claim, however, that claim is procedurally barred here and also contrary to the factual circumstances. See, e.g., Hunter v. State, 29 So.3d 256, 267 (Fla. 2008) (“Claims raised in prior postconviction proceedings cannot be relitigated in a subsequent postconviction motion unless the mov-ant can demonstrate that the grounds for relief were not known and could not have been known at the time of the earlier proceeding.”); Wright v. State, 857 So.2d 861, 868 (Fla. 2003) ("We will not entertain a second appeal of claims that were raised, or should have been raised, in a prior postconviction proceeding.”). Additionally, the dissent, in quoting a prior dissent at length, ignores the fact that it was Hannon and his family who made the decision not to present the mitigation with which the dissent again takes issue. Hannon II, 941 So.2d at 1126-28. Furthermore, as the dissent notes, the district court in Hannon IV, 622 F.Supp.2d at 1180-98, and the Eleventh Circuit in Hannon V, 562 F.3d at 1150-58, both denied relief to Hannon on this claim. Accordingly, no further discussion is necessary. '; . During our review, Hannon learned that sealed records were transmitted to the Capital Collateral Postconviction Records Repository without the parties’ knowledge. We granted a twenty-four-hour relinquishment of jurisdiction for the “limited purpose of an in camera inspection of the sealed records.” After conducting an in camera inspection, the circuit court entered an order on October 25, 2017, confirming that the sealed records did not entitle Hannon to relief. . At Hannon's trial, Dr. Diggs described the wound inflicted by Hannon to Snider’s neck the following way: So, when you got that amount of depth to the wound, it actually goes all the way back to the spine, you see. The wound actually stopped at the—at the backbone, the front of the backbone, of the cervical spine, as we , call it. That’s where it stppped. But it pretty much lacerated all of the tissue that normally sits in front of that. So, you're talking about a depth of approximately, about four inches, . The Hurst-related claims that Hannon raises in his Response to Order to Show Cause follow: (1) due process precludes the foreclosure of relief based on the decision in Hitchcock; (2) the Eighth Amendment and Florida Constitution entitle Hannon to retroactive application of Hurst; (3) chapter 2017-1 constitutes a substantive change in the law requiring retrospective application; and (4) Hannon’s death sentences violate Hurst, and the error is not harmless. . Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). . Although the dissent acknowledges this, it ignores how that fact would procedurally bar a Caldwell claim in this case. See, e.g., Hunter, 29 So.3d at 267; Wright, 857 So.2d at 868.