# Supreme Court of Florida

----

No. SC2026-0736

----

**ANDREW RICHARD LUKEHART,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

May 27, 2026

PER CURIAM.

Andrew Richard Lukehart was convicted and sentenced to death for the 1996 murder of Gabrielle Hanshaw. On May 1, 2026, Governor DeSantis issued a death warrant scheduling Lukehart's execution for June 2, 2026. Lukehart unsuccessfully sought successive postconviction relief in the circuit court and now appeals. We have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const.; *see also State v. Fourth Dist. Ct. of Appeal*, 697 So. 2d 70, 71 (Fla. 1997) (holding "that in addition to our appellate jurisdiction over sentences of death, we have exclusive jurisdiction to review all types

of collateral proceedings in death penalty cases"). We affirm. We also deny Lukehart's motion for a stay of execution.

## I

On February 25, 1996, Lukehart killed five-month-old Gabrielle Hanshaw in Jacksonville. At the time, Lukehart lived with Gabrielle's mother, Misty Rhue, who was his girlfriend. After Lukehart took Gabrielle to a room to change her diaper, Rhue saw Lukehart drive away from the house. Rhue searched the house but could not find Gabrielle. Lukehart initially told Rhue and the police that Gabrielle had been abducted, leading to an eighteen-hour search by the Jacksonville and Clay County Sheriff's Offices. Lukehart eventually told the officers that he had killed Gabrielle and directed them to a pond where they found her body. Lukehart told the police that he had dropped Gabrielle on her head while changing her diaper and then shook her. He said that, realizing Gabrielle had died, he panicked, drove to a rural area, and threw her into the pond, injuring her head on the car door in the process.

Gabrielle's injuries were inconsistent with Lukehart's story. She had suffered five separate impacts to her head, two of which caused skull fractures and could have each been fatal. Lukehart

testified during the guilt phase of his trial that he had lied when he told the police that he had dropped Gabrielle on her head. He testified that Gabrielle would not lie flat on the floor as he tried to change her diaper. So, he repeatedly and forcefully pushed her head and neck back onto the floor, killing her.

A jury convicted Lukehart of first-degree murder and aggravated child abuse. *Lukehart v. State*, 776 So. 2d 906, 911 (Fla. 2000). At the penalty phase, the State established that Lukehart had pleaded guilty to felony child abuse for injuring a previous girlfriend's baby and was on probation for that offense at the time he murdered Gabrielle. *Id.* The jury recommended the death sentence by a nine-to-three vote. *Id.* The trial court agreed and sentenced Lukehart to death for the first-degree murder. *Id.*

In the trial court's sentencing order, it found the State established three statutory aggravators: (1) the murder was committed during the commission of the felony of aggravated child abuse; (2) the victim was under twelve years of age;[1] and

---

1. We struck this aggravator on direct appeal as improperly doubling the same aspect of the crime as the aggravator about the murder having been committed by a person engaged in aggravated child abuse. But we found that its inclusion was harmless beyond

(3) Lukehart had a prior felony conviction for child abuse and was on felony probation for that offense (two factors merged).[2] *Id.* at 911. The trial court found two statutory mitigators: (1) Lukehart's age (twenty-two) and (2) his substantially impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. *Id.* The trial court also found four nonstatutory mitigators: (1) Lukehart's alcoholic and abusive father; (2) Lukehart's drug and alcohol abuse; (3) his having been sexually abused and suicidal as a child; and (4) his employment. *Id.*

On direct appeal, we affirmed Lukehart's convictions and death sentence.[3] *Id.* at 927. We found that while the State did not

---

a reasonable doubt, as Gabrielle's age increased the weight of the aggravated child abuse aggravator. *Id.* at 925.

2. We found that applying the probation aggravator to Lukehart violated his ex post facto rights. But we found this error to be harmless beyond a reasonable doubt, as (1) evidence of his probation was relevant to proving the prior violent felony aggravator and (2) the trial court merged the probation aggravator with the prior violent felony aggravator in its weighing decision. *Id.* at 924-25.

3. Lukehart raised the following claims on direct appeal: (1) the trial court erred in refusing to suppress certain statements from Lukehart; (2) the trial court erred by limiting cross-examination; (3) Lukehart's convictions of first-degree murder and aggravated battery were invalid because of insufficient evidence of

- 4 -

prove premeditated murder, the State had proven first-degree felony murder, with aggravated child abuse as the underlying felony. *Id.* at 921-22.[4]  On June 25, 2001, the United States Supreme Court denied Lukehart's petition for writ of certiorari. *Lukehart v. Florida,* 533 U.S. 934 (2001).

Lukehart unsuccessfully sought postconviction relief in state court. *See Lukehart v. State,* 70 So. 3d 503 (Fla. 2011) (affirming the denial of Lukehart's initial motion for postconviction relief filed

---

premeditation and the lack of a felony independent of the homicide; (4) the trial court erred in instructing the jury on justifiable or excusable homicide; (5) the disproportionality of Lukehart's death sentence; (6) the trial court erred in finding that the murder in the course of a felony aggravator had been established; (7) the trial court erred in applying the new aggravator of a crime committed while on felony probation; (8) the trial court erred in finding both murder in the course of a felony and that the victim was under twelve as aggravators (improperly doubling); (9) the victim-under-twelve aggravator and the standard jury instruction on the aggravator were unconstitutional; (10) the trial court erred in allowing a collateral crime (found to be a prior violent felony) to be a feature of the penalty phase; (11) the prosecutor's closing argument comments during the penalty phase were fundamental error; and (12) the trial court erred regarding the sentence for the noncapital conviction and the restitution orders. *Id.* at 911 n.1.

4.  We remanded for the trial court to resentence Lukehart for his aggravated child abuse conviction with instructions for the trial court to fill out a sentencing guidelines scoresheet, which it had failed to do. *Id.* at 927.

under Florida Rule of Criminal Procedure 3.850 and denying his

petition for a writ of habeas corpus);[5] *Lukehart v. State*, 103 So. 3d

134 (Fla. 2012) (affirming the denial of Lukehart's first successive

---

5.  In his initial postconviction proceeding, Lukehart raised the following claims before us: (1) counsel was ineffective for failing to challenge the prior violent felony aggravator during the penalty phase; (2) counsel was ineffective for failing to file a motion to cease Lukehart's medication and a motion for continuance; (3) counsel was ineffective for failing to present Dr. Harry Krop's testimony during the guilt phase; (4) Lukehart's amended postconviction motion should relate back to the filing of his shell motion; (5) counsel was ineffective for failing to include an additional argument in the motion to suppress; (6) counsel was ineffective for failing to properly argue and object to the jury instructions and the State's allegedly improper arguments regarding instructions; (7) counsel was ineffective under *Caldwell v. Mississippi*, 472 U.S. 320 (1985); (8) counsel was ineffective for failing to present live testimony rather than deposition testimony during the penalty phase; (9) counsel was ineffective for failing to object to allegedly improper prosecutorial comments; (10) the rule prohibiting juror interviews was unconstitutional; (11) Florida's lethal injection protocol was unconstitutional; and (12) cumulative error. *Id.* at 511 n.5. For claim (4), we concluded that Lukehart's motion was governed by rule 3.850 and his amended motion related back to the date of his original filing. *Id.* at 517. But we denied relief on all other claims and affirmed the postconviction court's denial of rule 3.850 relief. *Id.* at 525.

Regarding Lukehart's habeas petition, we denied relief on the following claims: (1) this Court should have revisited its prior proportionality review in light of a witness's testimony at the postconviction evidentiary hearing; (2) Florida's lethal injection protocol violates the Eighth Amendment; and (3) the inclusion of pancuronium bromide in Florida's lethal injection protocol violates free speech. *Id.* at 512 n.6, 524-25.

motion for postconviction relief filed under rule 3.851);[6] *Lukehart v. Jones*, No. SC2016-1225, 2017 WL 1033691 (Fla. Mar. 17, 2017) (denying Lukehart's successive habeas petition seeking relief under *Hurst v. Florida*, 577 U.S. 92 (2016)[7]).[8] Lukehart was also one of

---

6. In Lukehart's first successive postconviction proceeding, he raised the following claims: (1) counsel was ineffective for failing to (a) learn the effects of the medication Lukehart was taking, (b) inform the court and the jury that Lukehart was on medication and explain its effects, (c) move the court for the medications to cease, and (d) request a continuance; (2) Lukehart was incompetent at trial due to medication; and (3) Lukehart was involuntarily required to take medication. *Id.* at 135. We denied relief on all claims as procedurally barred. *Id.* at 136.

7. In *Hurst*, the United States Supreme Court held that Florida's capital sentencing scheme, in which the jury's role was to make a recommendation as to the death sentence, did not satisfy the Sixth Amendment's requirement that a jury find each fact necessary to impose the death sentence. 577 U.S. at 94. For Lukehart, we held that pursuant to our decision in *Asay v. State*, 210 So. 3d 1 (Fla. 2016), *Hurst* did not retroactively apply to him. *Lukehart v. Jones*, 2017 WL 1033691, at *1.

8. Simultaneously with his successive habeas petition, Lukehart sought *Hurst* relief by filing a second successive rule 3.851 motion in circuit court and requested we hold his successive habeas petition in abeyance or relinquish jurisdiction. *See* Motion to Hold in Abeyance or Relinquish Jurisdiction to the Circuit Court for Consideration of Successive Rule 3.851 Motion, *Lukehart v. Jones*, SC2016-1225 (Jan. 10, 2017). We denied that motion. *See* Order Denying Motion to Relinquish Jurisdiction, *Lukehart v. Jones*, SC2016-1225 (Feb. 2, 2017). The circuit court denied Lukehart's rule 3.851 motion, and Lukehart did not appeal.

the death row petitioners in *Allen v. Butterworth*, 756 So. 2d 52 (Fla. 2000), who sought a judgment that the Death Penalty Reform Act of 2000 was unconstitutional. We held that portions of the Act were unconstitutional and proposed new Florida Rules of Criminal Procedure 3.851 and 3.852. *Id.* at 67.

Lukehart sought habeas relief in federal court, too. On April 28, 2020, the United States District Court for the Middle District of Florida denied Lukehart habeas relief but granted a certificate of appealability on a *Miranda v. Arizona*, 384 U.S. 436 (1966), suppression claim. *Lukehart v. Sec'y, Fla. Dep't of Corr.*, No. 3:12-CV-585-J-32PDB, 2020 WL 2183150, at *59 (M.D. Fla. Apr. 28, 2020). The United States Court of Appeals for the Eleventh Circuit expanded the certificate to include an ineffective assistance of counsel claim and then ultimately affirmed the denial of federal habeas relief. *See Lukehart v. Sec'y, Fla. Dep't of Corr.*, 50 F.4th 32, 41 (11th Cir. 2022).

Governor DeSantis signed Lukehart's death warrant on May 1, 2026. On May 4, 2026, the Circuit Court for the Fourth Judicial Circuit held a status conference, where Lukehart was represented by counsel. On May 5, 2026, Lukehart directed records demands to

the District Eight Medical Examiner's Office, the Florida Department of Law Enforcement (FDLE), and the Department of Corrections (DOC) under Florida Rule of Criminal Procedure 3.852(h) and (i).  On May 6, 2026, all three state agencies objected, and the circuit court denied Lukehart's demands after a hearing that same day.

On May 8, 2026, Lukehart filed a third successive postconviction motion and a separate motion seeking to stay his execution.  He raised three claims: (1) Florida's lethal injection protocol, as applied to him, constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution; (2) Florida's lethal injection protocol is facially unconstitutional under the Eighth and Fourteenth Amendments; and (3) Lukehart's thirty-two-day warrant period deprives him of a full and fair postconviction proceeding in violation of his due process rights under the Fifth and Fourteenth Amendments. Following a case management conference, the circuit court issued a written order on May 12, 2026, summarily denying Lukehart relief on each of his claims.

This appeal follows.  Lukehart raises four claims before us:

- 9 -

(1) the circuit court erred in denying his as-applied Eighth Amendment method-of-execution challenge; (2) the circuit court erred in denying his facial Eighth Amendment method-of-execution challenge; (3) the circuit court erred in denying his warrant timeline challenge; and (4) the circuit court abused its discretion in denying his demands for additional public records. Lukehart asks that we vacate his death sentence or stay his execution and remand his case for an evidentiary hearing.

## II

We have consistently said:

> Summary denial of a successive postconviction motion is appropriate if the motion, files, and records in the case conclusively show that the movant is entitled to no relief. We review the circuit court's decision to summarily deny a successive rule 3.851 motion de novo, accepting the movant's factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief.

*Jennings v. State*, 422 So. 3d 107, 113 (Fla.) (quoting *Zakrzewski v. State*, 415 So. 3d 203, 208 (Fla. 2025)), *cert. denied*, 146 S. Ct. 402 (2025). Applying this standard, we affirm the circuit court's summary denial of Lukehart's successive postconviction motion.

- 10 -

## A

Lukehart argues that Florida's lethal injection protocol, as applied to him, is cruel and unusual punishment under the Eighth Amendment because of his severe kidney disease. The circuit court summarily denied this claim as untimely and meritless. We agree.

This claim is untimely. A capital defendant must file any postconviction claim within one year after the conviction judgment and sentence becomes final. Fla. R. Crim. P. 3.851(d)(1). Lukehart's judgment and sentence became final nearly twenty-five years ago when the United States Supreme Court denied his petition for certiorari review in 2001. *Lukehart*, 533 U.S. 934. An exception exists for newly discovered evidence: "[f]or an otherwise untimely claim to be considered timely as newly discovered evidence, it must be filed within a year of the date the claim became discoverable through due diligence." *Mungin v. State*, 320 So. 3d 624, 625-26 (Fla. 2020) (citing *Reed v. State*, 116 So. 3d 260, 264 (Fla. 2013)). But the facts on which Lukehart predicates this claim were discoverable more than a year ago. Florida's "current three-drug protocol has remained essentially unchanged since 2017." *Randolph v. State*, 422 So. 3d 166, 172 (Fla.), *cert.*

*denied*, 146 S. Ct. 819 (2025). And Lukehart admits that his medical records show deteriorating kidney values starting in 2023. Lukehart's assertion that this claim only became discoverable when his kidney disease grew more severe in January 2026 is without merit. We repeatedly reject arguments that method-of-execution claims are ripe during warrant litigation when the worsening medical condition was discovered years earlier. *See Cole v. State*, 392 So. 3d 1054, 1064 (Fla.) (Parkinson's disease since 2017), *cert. denied*, 145 S. Ct. 109 (2024); *Tanzi v. State*, 407 So. 3d 385, 392 (Fla.) (medical conditions since 2009), *cert. denied*, 145 S. Ct. 1914 (2025); *Rogers v. State*, 409 So. 3d 1257, 1266-67 (Fla.) (porphyria diagnosis), *cert. denied*, 145 S. Ct. 2695 (2025); *Randolph*, 422 So. 3d at 172-73 (lupus diagnosis since 1990).

This claim is also meritless. The Eighth Amendment, made applicable to Florida through the Fourteenth Amendment, prohibits "cruel and unusual punishments." Amend. VIII, U.S. Const.[9] To

---

9. The Florida Constitution also prohibits cruel and unusual punishments and directs that the prohibition "be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution." Art. I, § 17, Fla. Const.

succeed on an as-applied Eighth Amendment challenge to his method of execution, Lukehart must "(1) establish that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering and (2) identify a known and available alternative method of execution that entails a significantly less severe risk of pain." *Asay v. State*, 224 So. 3d 695, 701 (Fla. 2017) (citing *Glossip v. Gross*, 576 U.S. 863, 877 (2015)). Lukehart has done neither.

Lukehart claims that due to his kidney disease, Florida's lethal injection protocol's use of etomidate "may" create the "potential" for exaggerated negative consequences in his heart and lungs.[10] These conclusory speculations do not present an imminent risk that Florida's lethal injection protocol is sure or very likely to cause Lukehart needless suffering. This is especially true given the DOC "is entitled to the presumption that it will comply with the lethal injection protocol," which includes "safeguards to ensure the

---

10. Lukehart also claims that his allergy to diphenhydramine, an antihistamine, could result in a severe allergic reaction during his execution. Not so. As Lukehart admits, that drug is not used in Florida's lethal injection protocol, and, moreover, the antihistamine that DOC allegedly offers the condemned to reduce anxiety before their execution is entirely optional.

- 13 -

condemned is unconscious throughout the execution." *Cole*, 392 So. 3d at 1065 (first citing *Muhammad v. State*, 132 So. 3d 176, 203 (Fla. 2013); and then citing *Long v. State*, 271 So. 3d 938, 945 (Fla. 2019)). It is also worth repeating that "the Eighth Amendment 'does not demand the avoidance of all risk of pain in carrying out executions.'" *Tanzi*, 407 So. 3d at 392-93 (quoting *Bucklew v. Precythe*, 587 U.S. 119, 134 (2019)). And Lukehart has not sufficiently pled how his kidney disease would cause him to feel pain over "the well-established fact that the administration of etomidate will render him unconscious likely within one minute," *Rogers*, 409 So. 3d at 1268 (citing *Asay*, 224 So. 3d at 701), after which "a consciousness check is required and 'the execution cannot proceed until [he] is rendered unconscious,'" *King v. State*, No. SC2026-0336, 2026 WL 672101, at *5 n.9 (Fla. Mar. 10) (quoting *Valle v. Singer*, 655 F.3d 1223, 1233 (11th Cir. 2011)), *cert. denied*, No. 25-7018, 2026 WL 730666 (U.S. Mar. 16, 2026). Moreover, Florida's lethal injection protocol does "take into consideration the individual physical attributes of each inmate and provide for individualized procedures in light of any health concerns." *Tanzi*, 407 So. 3d at 393 (quoting *Grossman v. State*, 5 So. 3d 668 (Fla.

- 14 -

2009)).

Lukehart has also not "establish[ed] the existence of a known and available alternative method of execution that would entail a significantly less severe risk" than Florida's lethal injection protocol. *Glossip*, 576 U.S. at 878 (quoting *Baze v. Rees*, 553 U.S. 35, 57-60 (2008)). Before us, Lukehart has not offered any alternative method. Instead, he argues that he should not have to provide one because doing so is morally repugnant, against his religion, and impossible to realistically offer.[11] Yet "it is settled that capital punishment is constitutional," and "there must be a [constitutional] means of carrying it out." *Glossip*, 576 U.S. at 869 (alteration in original) (quoting *Baze*, 553 U.S. at 47). So, because Lukehart chooses to raise a method-of-execution claim, he "must make the

_____

11. Lukehart also argues that *Glossip* wrongly requires that he provide an alternative method because doing so would violate his rights under the First and Fourteenth Amendments. But we have rejected the claim that the test articulated in *Glossip* "incorrectly requires a prisoner scheduled for execution to prove the existence of an available alternative method of execution." *Correll v. State*, 184 So. 3d 478, 489 (Fla. 2015). That is because we are "bound by the conformity clause of the Florida Constitution to construe the state prohibition against cruel and unusual punishment consistently with pronouncements by the United States Supreme Court." *Id.* (citing *Valle v. State*, 70 So. 3d 530, 538-39 (Fla. 2011)).

case that the State really can put him to death, though in a different way than it plans." *Heath v. State*, 426 So. 3d 1253, 1262 (Fla.) (quoting *Nance v. Ward*, 597 U.S. 159, 169 (2022)), *cert. denied*, No. 25-6746, 2026 WL 363902 (U.S. Feb. 10, 2026). He fails to do so.[12] We affirm the circuit court's denial of this claim.

## B

Lukehart next argues that Florida's lethal injection protocol is facially unconstitutional as a cruel and unusual punishment under the Eighth Amendment. The circuit court summarily denied this claim as untimely and meritless for the same reasons as Lukehart's first claim. We agree.

As for timeliness, Lukehart has not justified his delay in bringing this claim given that, as we have said, Florida's lethal injection protocol "has remained essentially unchanged since 2017."

---

12. In the circuit court below, Lukehart pointed to other states that begin their lethal injections with analgesics and still others that use electrocution or lethal gas. But he failed to say how any of these methods are "feasible, readily implemented, and [would] in fact significantly reduce[] a substantial risk of severe pain" compared to Florida's lethal injection protocol. *Tanzi*, 407 So. 3d at 393 (second alteration in original) (quoting *Glossip*, 576 U.S. at 877). And he does not argue for any alternative method on appeal.

*Randolph*, 422 So. 3d at 172. As for the argument's merits, "[o]nce we have upheld the constitutionality of a lethal injection protocol, that protocol is facially constitutional as a matter of law." *Banks v. State*, 150 So. 3d 797, 801 (Fla. 2014). In *Asay*, 224 So. 3d at 702, we approved Florida's current three-drug protocol against an Eighth Amendment challenge. We have repeatedly rejected invitations to hold otherwise and do so again here. *See Jimenez v. State*, 265 So. 3d 462, 474-75 (Fla. 2018); *Long*, 271 So. 3d at 945-46; *Cole*, 392 So. 3d at 1064-65; *Tanzi*, 407 So. 3d at 392-93; *Rogers*, 409 So. 3d at 1268-69; *Randolph*, 422 So. 3d at 173; *Heath*, 426 So. 3d at 1262-63. We affirm the circuit court's denial of this claim.

## C

Lukehart also argues that his thirty-two-day warrant period deprives him of his due process rights under the United States and Florida Constitutions. The circuit court summarily denied this claim as meritless. We agree.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." Amend. XIV, U.S. Const. Florida's Constitution similarly ensures that "[n]o person shall be

deprived of life, liberty or property without due process of law."
Art. I, § 9, Fla. Const. We have consistently said "[d]ue process
requires that a defendant be given notice and an opportunity to be
heard on a matter before it is decided." *Asay v. State*, 210 So. 3d 1,
5 (Fla. 2016) (citing *Huff v. State*, 622 So. 2d 982, 982 (Fla. 1993)).
Lukehart has not identified any matter in his warrant litigation
about which he was denied notice or an opportunity to be heard
before it was decided. Lukehart argues that his expedited warrant
litigation schedule nevertheless deprives him of a meaningful
opportunity to challenge his execution. We have repeatedly rejected
similar claims and have held that "an expedited warrant litigation
schedule does not deprive a defendant of his right to due process."
*Windom v. State*, 416 So. 3d 1140, 1150 (Fla.), *cert. denied*, 146 S.
Ct. 66 (2025); *see also Knight v. State*, No. SC2026-0718, 2026 WL
1361316, at *7-8 (Fla. May 15), *cert. denied*, No. 25-7415, 2026 WL
1425695 (U.S. May 21, 2026); *Randolph*, 422 So. 3d at 173;
*Jennings*, 422 So. 3d at 119; *Jones v. State*, 419 So. 3d 619, 625-26
(Fla.), *cert. denied*, 146 S. Ct. 79 (2025); *Bates v. State*, 416 So. 3d
312, 321 (Fla.) ("A thirty-day warrant period does not, in and of
itself, deprive a capital defendant of the rights [to due process and

counsel].”), *cert. denied*, 146 S. Ct. 66 (2025); *Zakrzewski*, 415 So. 3d at 210-11; *Bell v. State*, 415 So. 3d 85, 106-07 (Fla.), *cert. denied*, 145 S. Ct. 2872 (2025); *Hutchinson v. State*, 416 So. 3d 273, 279-80 (Fla.), *cert. denied*, 145 S. Ct. 1980 (2025); *Tanzi*, 407 So. 3d at 390-91; *Barwick v. State*, 361 So. 3d 785, 789-91 (Fla. 2023).[13]

Lukehart has challenged his death sentence numerous times over nearly twenty-five years. *See supra* pp. 5-8 (outlining Lukehart's postconviction litigation). His current thirty-two-day warrant litigation schedule does not deprive him of due process. We affirm the circuit court's denial of this claim.

**D**

Lukehart argues that the circuit court wrongly denied his various demands for additional public records under rule 3.852. We review such claims for abuse of discretion. *Dailey v. State*, 283 So. 3d 782, 792 (Fla. 2019). We find none.

---

13. To the extent that Lukehart argues that his warrant schedule deprives him of effective counsel, such a claim is not cognizable because "[u]nder Florida and federal law, a defendant has no constitutional right to effective collateral counsel." *Zack v. State*, 911 So. 2d 1190, 1203 (Fla. 2005).

- 19 -

Lukehart made demands under rule 3.852(h) and (i), which permits "counsel for a defendant subject to a death warrant to request the production of certain public records." *Cole*, 392 So. 3d at 1065-66 (citing Fla. R. Crim. P. 3.852(h)(3)). This "discovery tool is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief." *Id.* at 1066 (quoting *Asay*, 224 So. 3d at 700). Accordingly,

> records requests under Rule 3.852(h) are limited to persons and agencies who were the recipients of a public records request at the time the defendant began his or her postconviction odyssey, whereas, records requests under Rule 3.852(i) must show how the requested records relate to a colorable claim for postconviction relief and good cause as to why the public records request was not made until after the death warrant was signed.

*Id.* (citation modified) (quoting *Dailey*, 283 So. 3d at 792).

Lukehart demanded records related to recent and scheduled administrations of Florida's lethal injection protocol from the District Eight Medical Examiner's Office, FDLE, and DOC. The circuit court denied these demands as either not related to a colorable claim or as overly broad and burdensome. These denials were far from being the type of "arbitrary, fanciful, or unreasonable" decision that is an abuse of discretion. *State v. Coney*, 845 So. 2d

- 20 -

120, 137 (Fla. 2003) (quoting *White v. State*, 817 So. 2d 799, 806 (Fla. 2002)). Indeed, we have said that "requests related to actions of lethal injection personnel in past executions do not relate to a colorable claim concerning future executions because there is a presumption that members of the executive branch will perform their duties properly." *Muhammad*, 132 So. 3d at 203 (citing *Valle*, 70 So. 3d at 549). Moreover, "because we have upheld the constitutionality of the current lethal injection protocol, such records 'are unlikely to lead to a colorable claim for relief.'" *Dailey*, 283 So. 3d at 792 (citation modified) (quoting *Hannon v. State*, 228 So. 3d 505, 512 (Fla. 2017)).

It bears repeating that in Lukehart's method-of-execution claim described above, he makes no attempt to allege an alternative to Florida's lethal injection protocol—making the claim legally insufficient. So, this method-of-execution claim that he argues is related to his records demands cannot proceed. Lukehart acknowledges our precedent against his position but argues that redacted records obtained in a federal lawsuit by Frank Walls, who was recently executed, justify his additional records requests here.

We have rejected this argument. *See Heath*, 426 So. 3d at 1263-64; *King*, 2026 WL 672101, at *5-6.

To the extent that Lukehart contends that rule 3.852 violates his equal protection and due process rights under the Fourteenth Amendment, we have "previously rejected efforts to morph a challenge to the denial of a public records demand into a constitutional challenge." *King*, 2026 WL 672101, at *6 (citing *Randolph*, 422 So. 3d at 172). The limitations imposed by rule 3.852 are "reasonable in the context of capital postconviction claims." *Wyatt v. State*, 71 So. 3d 86, 111 (Fla. 2011).

## III

We affirm the summary denial of Lukehart's motion for postconviction relief, along with the circuit court's denial of his demands for additional public records. Accordingly, we also deny his motion for a stay of execution.

No oral argument is required, no motion for rehearing will be entertained, and the mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, GROSSHANS, FRANCIS, SASSO, and TANENBAUM, JJ., concur.

An Appeal from the Circuit Court in and for Duval County,
    Mark Jeffrey Borello, Judge
    Case No. 161996CF002645AXXXMA

Dawn B. Macready, Capital Collateral Regional Counsel, Adrienne Joy Shepherd, Assistant Capital Collateral Regional Counsel, and Alicia Hampton, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

    for Appellant

James Uthmeier, Attorney General, Jason W. Rodriguez, Senior Assistant Attorney General, and Charmaine M. Millsaps, Special Counsel, Assistant Attorney General, Tallahassee, Florida,

    for Appellee