# Supreme Court of Florida

_____

No. SC19-1780
_____

**JAMES MILTON DAILEY,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.


_____

No. SC19-1797
_____

**JAMES MILTON DAILEY,**
Petitioner,

vs.

**MARK S. INCH, etc.,**
Respondent.

November 12, 2019

PER CURIAM.

James Milton Dailey, a prisoner under sentence of death and an active death warrant, appeals the circuit court's order dismissing in part and denying in part his third successive motion for postconviction relief, which was filed under Florida

Rule of Criminal Procedure 3.851. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. We affirm, and we also deny Dailey's motion for stay of execution and his petition for a writ of habeas corpus.

## BACKGROUND

On May 6, 1985, fourteen-year-old Shelly Boggio's "nude body was found floating in the water near Indian Rocks Beach in Pinellas County, Florida." *Dailey v. State*, 965 So. 2d 38, 41 (Fla. 2007). Boggio "had been stabbed repeatedly, strangled, and drowned." *Id.* A jury found Dailey guilty of Boggio's first-degree murder and unanimously recommended death. *Dailey v. State*, 594 So. 2d 254, 256 (Fla. 1991). The trial court followed the recommendation. *Id.*

On direct appeal, we affirmed Dailey's conviction but reversed the sentence. *Id.* at 259. The trial court again sentenced him to death on remand, and we affirmed. *Dailey v. State*, 659 So. 2d 246, 248 (Fla. 1995), *cert. denied*, 516 U.S. 1095 (1996). In 2007, we affirmed the circuit court's denial of Dailey's initial motion for postconviction relief and denied his petition for a writ of habeas corpus. *Dailey*, 965 So. 2d at 48.

Dailey subsequently filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Florida. *Dailey v. Sec'y, Fla. Dep't of Corr.*, No. 8:07-cv-1897-T-27MSS, 2008 WL 4470016, at *1 (M.D. Fla. Sept. 30, 2008). The federal district court dismissed or denied all claims and declined to

issue a certificate of appealability. *Id.* at \*10; *Dailey v. Sec'y, Fla. Dep't of Corr.*, No. 8:07-CV-1897-T-27MAP, 2011 WL 1230812, at \*32 (M.D. Fla. Apr. 1, 2011), *amended in part, vacated in part*, No. 8:07-CV-1897-T-27MAP, 2012 WL 1069224, at \*8 (M.D. Fla. Mar. 29, 2012) (amending opinion to include the denial of an additional claim of ineffective assistance of counsel and denying motion for certificate of appealability to the Eleventh Circuit Court of Appeals).

In 2018, we affirmed the circuit court's denial of Dailey's first successive postconviction motion. *Dailey v. State*, 247 So. 3d 390, 391 (Fla. 2018). Dailey's second successive postconviction motion was denied in part and dismissed in part by the circuit court; we affirmed on October 3, 2019. *Dailey v. State*, 44 Fla. L. Weekly S219, 2019 WL 4865855 (Fla. Oct. 3, 2019).

After Governor DeSantis signed Dailey's death warrant on September 25, 2019, Dailey filed a third successive motion for postconviction relief. The motion raised four claims: (1) his execution would be unconstitutionally arbitrary; (2) newly discovered evidence proves that he is actually innocent and that the State committed *Brady*[1] and *Giglio*[2] violations; (3) the circuit court would violate his constitutional rights if it did not order the Florida Department of Corrections

---

1. *Brady v. Maryland*, 373 U.S. 83 (1963).

2. *Giglio v. United States*, 405 U.S. 150 (1972).

(DOC) to comply with his requests related to defense execution witnesses; and (4) the totality of his punishment—including over thirty years spent on death row—violates the Eighth Amendment.

Following an evidentiary hearing on one newly discovered evidence claim, the circuit court entered an order dismissing in part and denying in part the motion.

## ANALYSIS

In this Court, Dailey appeals the denial of postconviction relief and the denial of certain records requests filed after the Governor signed his death warrant. Dailey also filed a habeas petition in this Court. We affirm the postconviction court's denial of relief and deny his habeas petition.

### Arbitrariness of Execution

In his first claim, Dailey contends that the circuit court erred in summarily rejecting his claim that his execution would be so arbitrary as to violate the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Because the record conclusively shows that Dailey is not entitled to relief, we affirm. *See* Fla. R. Crim. P. 3.851(f)(5)(B) ("If the motion, files, and records in the case conclusively show that the movant is entitled to no relief, the motion may be denied without an evidentiary hearing.").

Dailey argues that the circuit court wrongly concluded that "some of the arguments raised in" support of "this ground amount[ed] to untimely or

procedurally barred claims." These included his "facial challenges to the clemency or warrant [selection] process," his assertion that his execution would be arbitrary because he is actually innocent, and his claim that he had been denied the chance to present newly discovered evidence at an updated clemency hearing.

We agree that Dailey's actual innocence claim is procedurally barred. Dailey has already unsuccessfully raised an actual innocence claim in his second successive postconviction motion. *Dailey*, 44 Fla. L. Weekly at S222, 2019 WL 4865855, at *7. He cannot present the claim again "by merely reframing it as a challenge to the warrant." Moreover, we have repeatedly held that freestanding actual innocence claims are not cognizable under Florida law. *Id.*; *Tompkins v. State*, 994 So. 2d 1072, 1089 (Fla. 2008).

The remaining claims fail on the merits. We have consistently rejected the assertion that the warrant selection process is arbitrary because there are no standards that constrain the Governor's discretion in determining which warrant to sign. *See, e.g.*, *Hannon v. State*, 228 So. 3d 505, 509 (Fla. 2017); *Bolin v. State*, 184 So. 3d 492, 502-03 (Fla. 2015); *Mann v. State*, 112 So. 3d 1158, 1162-63 (Fla. 2013); *Ferguson v. State*, 101 So. 3d 362, 366 (Fla. 2012); *Gore v. State*, 91 So. 3d 769, 780 (Fla. 2012); *Valle v. State*, 70 So. 3d 530, 551-52 (Fla. 2011). Related challenges to the clemency process have also been denied. *See, e.g.*, *Johnston v. State*, 27 So. 3d 11, 24 (Fla. 2010); *Marek v. State*, 8 So. 3d 1123, 1129-30 (Fla.

2009). And to the extent Dailey asserts that his execution would be arbitrary because he was not granted an additional clemency proceeding at which to present newly discovered evidence, his claim is foreclosed by our caselaw. *See, e.g.*, *Grossman v. State*, 29 So. 3d 1034, 1044 (Fla. 2010); *Johnston*, 27 So. 3d at 25-26. Accordingly, we conclude that the circuit court properly rejected this claim.

### Newly Discovered Evidence, *Brady*, and *Giglio*

Dailey next argues that the circuit court erred in rejecting his claim that newly discovered evidence proves the State committed *Brady* and *Giglio* violations. We disagree.

In order to demonstrate entitlement to relief based on newly discovered evidence, two requirements must be satisfied. First, "the evidence 'must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence.' " *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998) (alteration in original) (quoting *Torres-Arboleda v. Dugger*, 636 So. 2d 1321, 1324-25 (Fla. 1994)). Second, the "evidence must be of such nature that it would probably produce an acquittal on retrial." *Id.* (citing *Jones v. State*, 591 So. 2d 911, 915 (Fla. 1991)). "If," as here, "the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence." *Walton v. State*, 246 So. 3d 246, 249 (Fla. 2018) (citing

*Jones*, 591 So. 2d at 915), *cert. denied*, 139 S. Ct. 1184 (2019).  To be timely, a claim based on newly discovered evidence must be brought within one year of the date upon which it became discoverable.  *Jimenez v. State*, 997 So. 2d 1056, 1064 (Fla. 2008).

Dailey claims that newly discovered evidence exists in the form of: testimony from James Slater, a former assistant state attorney; statements made by Edward Coleman, a former inmate who was previously incarcerated with Dailey; and statements made by David Howsare, a former correctional officer.  He also raises a *Brady* claim based on Slater's testimony and a *Giglio* claim based on Coleman's statements.  We address each claim below.

*James Slater*

Dailey first alleges that the circuit court erred in denying his claim that testimony from James Slater constitutes newly discovered evidence proving that the State committed a *Brady* violation.  When the lower court has ruled on a claim following an evidentiary hearing, we review "the trial court's findings on questions of fact, the credibility of witnesses, and the weight of the evidence for competent, substantial evidence."  *Green v. State*, 975 So. 2d 1090, 1100 (Fla. 2008).  The

lower "court's application of the law to the facts," however, is reviewed de novo. *Id.*

In support of his postconviction motion below, Dailey attached an affidavit from former Assistant State Attorney James Slater. In the affidavit, Slater recalled that he worked at the State Attorney's Office in Pinellas County at the time the victim, Shelly Boggio, was murdered. He stated that he was involved in the investigation of Boggio's death and the resulting prosecution of Jack Pearcy, Dailey's codefendant. Slater explained that he remembered being called to the crime scene where Boggio's body was recovered. He said that law enforcement told him that Pearcy attempted to have sex with Boggio, that Pearcy could not perform, and that Boggio teased Pearcy, causing him to become irate and stab her.

At the evidentiary hearing, Slater testified that his role in Pearcy's case was limited to appearing at the crime scene and testifying at a subsequent hearing. When Slater was asked whether he remembered law enforcement telling him that Pearcy attempted to have sex with Boggio but could not perform, he responded that, "[i]n [his] definition of law enforcement," he could not identify "any specific individual or source of that information." He explained that he "just had a general 34-year-old recollection that that's what this case was about." When asked if his recollection also included that Boggio teased Pearcy and he subsequently stabbed her, Slater replied, "That is what the affidavit indicated, yes."

- 8 -

Slater went on to explain that the longer he thought about it, "the less [he could] connect that type of motivation to anybody involved in that case." He admitted that he was not sure whether he "had gotten confused with another case" he was prosecuting at the time. He also confessed to feeling "tugged in two directions" and to feeling uncomfortable speaking to Dailey's attorneys alone.

Slater later clarified that he was positive the statements were made to him. But he said that he did not know who made the statements, where he was when the statements were made, or the context in which the statements were shared with him. He stated that he accordingly "question[ed] whether [the statements] had anything to do with this case."

In its final order, the circuit court rejected the claim. The court held that the claim was untimely, that Slater's testimony did not constitute favorable, admissible evidence, and that Slater's affidavit was inadmissible hearsay.

We affirm the circuit court's denial of relief. We first conclude that Dailey has failed to state a *Brady* claim based on Slater's testimony. *Brady* requires the State "to disclose material information within its possession or control that is favorable to the defense." *Taylor v. State*, 62 So. 3d 1101, 1114 (Fla. 2011). To establish a *Brady* violation, the defendant has the burden to show "(1) that favorable evidence, either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material,

the defendant was prejudiced." *Id.* (emphasis omitted); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). To meet the materiality prong, the defendant must demonstrate a reasonable probability that, had the suppressed evidence been disclosed, the jury would have reached a different verdict. *Taylor*, 62 So. 3d at 114; *Strickler*, 527 U.S. at 289. "[A] 'reasonable probability' [is] 'a probability sufficient to undermine confidence in the outcome.' " *United States v. Bagley*, 473 U.S. 667, 682 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Here, Dailey cannot make the requisite showing. Dailey argues that Slater's testimony and affidavit prove that the State suppressed evidence that Pearcy had confessed to Boggio's murder and had a clear motive for doing so. But even if this Court were to consider the affidavit that was held inadmissible below, we would be left with inconsistent statements from Slater indicating—at best—that an unidentified member of law enforcement, at some unknown time, told Slater a piece of information that he cannot connect to Pearcy. Because Slater was not certain that the statements at issue "had anything to do with" Pearcy's case, Dailey has not demonstrated the existence of any exculpatory evidence that would have created a reasonable probability of a different verdict.

We also conclude that Dailey has failed to state a newly discovered evidence claim. The State alleges—and Dailey does not dispute—that Slater was listed as a

witness at Dailey's trial. Dailey neglects to explain why he could not have discovered the information to which Slater testified either prior to trial or at some point during the decades that followed. Accordingly, his claim is untimely.

*Edward Coleman*

Dailey next contends that the circuit court erred in summarily dismissing his claim that statements from Edward Coleman constitute newly discovered evidence proving that the State violated *Giglio*. In an affidavit attached to Dailey's postconviction motion, Coleman indicated that he was incarcerated at Pinellas County Jail with Dailey and Pearcy. Coleman stated that he never saw Dailey talk about his case. He further alleged that Detective John Halliday pulled him into a private interview room on two separate occasions. Coleman claimed that on the first occasion, Detective Halliday asked if Dailey or Pearcy discussed their cases with other inmates. Coleman stated that Detective Halliday then instructed him "to listen carefully and try to get information." On the second occasion, Coleman alleged, Detective Halliday had newspaper articles about Boggio's murder, directed him to look for specific details about the case, and promised to reduce his charges if he shared any information. Dailey alleges that this testimony would

- 11 -

probably produce an acquittal or less severe sentence because it would cast doubt on the credibility of the inmates who testified against him at trial.

To the extent that Dailey contends Coleman's testimony constitutes newly discovered evidence, we conclude that his claim is untimely. Dailey has long known that Detective Halliday approached inmates housed at the Pinellas County Jail, pulled them into a private interview room, and showed them newspapers about Boggio's murder. In his 1999 amended motion for postconviction relief, Dailey alleged that trial counsel was ineffective for failing to call two inmates to testify that Detective Halliday approached them with newspaper articles. *See Dailey*, 44 Fla. L. Weekly at S220; 2019 WL 4865855, at \*4. After waiving the claim, Dailey raised it again as a newly discovered evidence claim in his second successive postconviction motion, filed in 2017. *Id.*

This history indicates that Dailey has been on notice—since at least 1999— that other inmates might have been questioned by Detective Halliday. He fails to state any reason why Coleman's testimony has only become discoverable within the last year. Instead, he argues that he was not granted an evidentiary hearing at which to fully explain why the evidence could not have been discovered earlier. He therefore contends that this Court must accept the allegation in his postconviction motion that the evidence is newly discovered. This argument is misguided. Rule 3.851(e)(2)(C)(iv) states that a successive postconviction motion

- 12 -

including a newly discovered evidence claim based on a witness's testimony must contain "a statement of the reason why the witness . . . was not previously available." Because Dailey's motion failed to do so, his claim cannot be considered timely.

Dailey also argues that this evidence proves the State violated *Giglio*. "[A] *Giglio* claim is based on the prosecutor's knowing presentation at trial of false testimony against the defendant." *Jimenez v. State*, 265 So. 3d 462, 479 (Fla. 2018) (quoting *Guzman v. State*, 868 So. 2d 498, 506 (Fla. 2003)). To establish a *Giglio* violation, Dailey must show that "(1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." *Moore v. State*, 132 So. 3d 718, 724 (Fla. 2013). Here, Dailey has not identified any false testimony presented during his trial, much less alleged that the State knew of its falsity or proved that any such statement was material. Accordingly, he is not entitled to relief.

*David Howsare*

Finally, Dailey argues that the circuit court erred in summarily dismissing his claim that statements from former Correctional Officer David Howsare constitute newly discovered evidence. Below, Dailey filed an affidavit in which Officer Howsare stated that he worked at the Pinellas County Jail while Pearcy was incarcerated there. According to Officer Howsare, Pearcy was known to

manipulate guards and fellow inmates. Officer Howsare further stated that Pearcy engaged in a physical altercation with another inmate and attempted to secure favors from guards.

The circuit court concluded that the claim is untimely. We agree. Dailey neglects to explain why this information could not have been discovered prior to his trial or at some point during the subsequent decades of postconviction litigation. *See* Fla. R. Crim. P. 3.851(e)(2)(C)(iv). Accordingly, he is not entitled to relief.

*Cumulative Analysis*

Dailey next argues that the circuit court erred in failing to consider whether, when the allegations presented in this postconviction proceeding are considered cumulatively with admissible evidence developed in prior postconviction proceedings, he is entitled to a new trial. We disagree. Given that his newly discovered evidence claims were correctly rejected as untimely and that he failed to establish a *Brady* violation, no such cumulative analysis was required. *See Dailey*, 44 Fla. L. Weekly at S221, 2019 WL 4865855, at \*6.

**Defense Execution Witnesses**

Dailey next asserts that the circuit court violated his Sixth and Eighth Amendment rights in refusing to direct the DOC to comply with his requests that (1) one or both of his designated legal witnesses be allowed access to a writing pad

and pen during his execution; (2) one or both of his designated legal witnesses be allowed access to a telephone before and during the execution process; (3) he be afforded a second witness to his execution; and (4) one of his witnesses be allowed to view the IV insertion process.  We disagree.  We recently rejected a nearly identical claim in *Long v. State*, 271 So. 3d 938, 946-47 (Fla.), *cert. denied*, 139 S. Ct. 2635 (2019).  As we recognized in *Long*, "[t]he DOC is entitled to a presumption that it will properly perform its duties while carrying out an execution . . . [and] our 'role is not to micromanage the executive branch in fulfilling its own duties relating to executions.' "  *Long*, 271 So. 3d at 946 (alterations in original) (quoting *Hannon*, 228 So. 3d at 509); *see also* art. II, § 3, Fla. Const. ("The powers of the state government shall be divided into legislative, executive and judicial branches.  No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.").  Because Dailey has not demonstrated that the DOC's current policies and procedures are unconstituional, and because "separation of powers principles preclude us from performing the executive function of establishing a procedure to

be used for executions," we conclude that the circuit court did not err in refusing to direct the DOC to comply with Dailey's requests. *Long*, 271 So. 3d at 947.

## Public Records

Dailey next challenges the circuit court's denial of his requests for certain public records under Florida Rule of Criminal Procedure 3.852(h)(3) and (i). "We review rulings on public records requests pursuant to Florida Rule of Criminal Procedure 3.852 for abuse of discretion," *Bowles v. State*, 276 So. 3d 791, 795 (Fla.) (quoting *Hannon*, 228 So. 3d at 511), *cert. denied*, No. 19-5617, 2019 WL 3977767 (U.S. Aug. 22, 2019), and conclude that none exists here.

As we have recently explained:

> Rule 3.852 is "not intended to be a procedure authorizing a fishing expedition for records." *Sims v. State*, 753 So. 2d 66, 70 (Fla. 2000). For this reason, records requests under Rule 3.852(h) are limited to "persons and agencies who were the recipients of a public records request at the time the defendant began his or her postconviction odyssey," *id.*; whereas, records requests under Rule 3.852(i) must "show how the requested records relate to a colorable claim for postconviction relief and good cause as to why the public records request was not made until after the death warrant was signed." *Asay* [*v. State*, 224 So. 3d 695, 700 (Fla. 2017)] (quoting *Tompkins v. State*, 872 So. 2d 230, 244 (Fla. 2003)).

*Bowles*, 276 So. 3d at 795 (alteration in original) (quoting *Hannon*, 228 So. 3d at 511). If "a defendant cannot demonstrate that he or she is entitled to relief on a claim or that records are relevant or may reasonably lead to the discovery of

admissible evidence, the trial court may properly deny a records request." *Id.* (quoting *Asay*, 224 So. 3d at 700).

Here, Dailey requested records from the Pinellas County Sheriff's Office, the Office of the Governor, the State Attorney's Office, the Office of the Medical Examiner for the Eighth District, the Florida Commission on Offender Review, the DOC, the Office of the Attorney General, and the Florida Department of Law Enforcement. The circuit court denied all requests to which the agencies objected, concluding that none were related to a colorable claim for postconviction relief. Dailey subsequently moved for reconsideration of his requests to certain agencies;[3] his motions were denied.

Dailey has not presented any reason for us to hold that the circuit court abused its discretion in denying his requests. Dailey suggests that the circuit court erred in denying his requests that the DOC and the Office of the Medical Examiner for the Eighth District supply records related to the lethal injection protocol. His argument lacks merit. Because we have upheld the constitutionality of the current lethal injection protocol, such records "are 'unlikely to lead to a colorable claim for relief.' " *Hannon*, 228 So. 3d at 512 (quoting *Walton v. State*, 3 So. 3d 1000, 1014 (Fla. 2009)). The circuit court properly denied these requests.

---

3. These include the Office of the Medical Examiner for the Eighth District, the State Attorney's Office, the Office of the Attorney General, and the DOC.

Dailey next alleges that rule 3.852 violates the Equal Protection and Due Process Clauses. He claims that certain restrictions in rule 3.852(h)(3) and rule 3.852(i)—which apply only to capital postconviction defendants—prevent him from obtaining public records to which he would otherwise be entitled. We disagree. We have rejected related challenges to the constitutionality of rule 3.852, *Wyatt v. State*, 71 So. 3d 86, 111 (Fla. 2011); *Howell v. State*, 133 So. 3d 511, 515-16 (Fla. 2014), and decline to rule otherwise here. The disputed limitations in rule 3.852(h)(3) and rule 3.852(i) are aimed at preventing capital postconviction defendants from engaging in an "eleventh hour attempt to delay the execution rather than a focused investigation into some legitimate inquiry." *Sims*, 753 So. 2d at 68. Therefore, these restrictions are "reasonable in the context of capital postconviction claims." *Wyatt*, 71 So. 3d at 111.

## Length of Time on Death Row

Dailey next argues that the circuit court erred in summarily denying his claim that adding his execution to the more than thirty years he has spent on death row amounts to cruel and unusual punishment under the Eighth Amendment. We have previously rejected similar claims, *see, e.g.*, *Long*, 271 So. 3d at 946; *Gore*, 91 So. 3d at 780, and Dailey's arguments do not justify departure from our

- 18 -

precedent.  Accordingly, we affirm the circuit court's summary denial of this claim.

## HABEAS PETITION

Dailey also petitions this Court for a writ of habeas corpus, raising five claims.  In his first two claims, Dailey alleges that there is insufficient evidence to sustain his conviction and argues that his sentence is disproportionate both as compared to his codefendant and as compared to others convicted of similar crimes.  Because these claims "could have been, should have been, or were raised on direct appeal," they are procedurally barred.  *Breedlove v. Singletary*, 595 So. 2d 8, 10 (Fla. 1992).

Next, Dailey requests that this Court "take a holistic view" of evidence we have previously held procedurally barred, along with errors committed at trial but deemed harmless on direct appeal.  This claim is nothing more than an attempt to relitigate issues this Court has rejected in prior proceedings, or to restate claims raised in the current postconviction appeal.  It is therefore procedurally barred.  *See Green*, 975 So. 2d at 1115.

In his next claim, Dailey argues that allegations of ineffective assistance of postconviction counsel should provide a basis for the Court to consider evidence of actual innocence that would otherwise be procedurally barred.  He presented this argument in his second successive postconviction motion, and we rejected it.

- 19 -

*Dailey*, 44 Fla. L. Weekly at S221, 2019 WL 4865855, at \*4-\*5. "Habeas corpus is not to be used for additional appeals of issues that . . . were raised" in previous "postconviction motions." *Green*, 975 So. 2d at 1115. The claim is accordingly procedurally barred.

Finally, Dailey argues that the principles underlying the *Hurst*[4] decisions require this Court to find that his sentence is inappropriate. But we have already determined that Dailey is not entitled to *Hurst* relief. *Dailey*, 247 So. 3d at 391. He is therefore procedurally barred from raising the instant claim. *See Breedlove*, 595 So. 2d at 10 (concluding that habeas corpus proceedings may not be used to present "different grounds to reargue" an issue previously raised). Accordingly, we deny Dailey's habeas petition.

## CONCLUSION

For the reasons expressed above, we affirm the circuit court's order dismissing in part and denying in part Dailey's third successive postconviction motion. We also deny Dailey's habeas petition and his motion for stay of execution.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, LAGOA, LUCK, and MUÑIZ, JJ., concur.

---

4. *Hurst v. Florida*, 136 S. Ct. 616 (2016), and *Hurst v. State*, 202 So. 3d 40 (Fla. 2016).

ANY MOTION FOR REHEARING OR CLARIFICATION MUST BE FILED WITHIN TEN DAYS.  A RESPONSE TO THE MOTION FOR REHEARING OR CLARIFICATION MAY BE FILED WITHIN FIVE DAYS AFTER THE FILING OF THE MOTION FOR REHEARING OR CLARIFICATION.  NOT FINAL UNTIL THIS TIME PERIOD EXPIRES TO FILE A REHEARING OR CLARIFICATION MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Pinellas County,
        Pat Edward Siracusa, Jr., Judge - Case No. 521985CF007084XXXXNO
And an Original Proceeding – Habeas Corpus

Eric Pinkard, Capital Collateral Regional Counsel, and Chelsea Rae Shirley, Julissa R. Fontán, and Kara R. Ottervanger, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida; Seth Miller, Innocence Project of Florida, Inc., Tallahassee, Florida; Laura Fernandez, New Haven, Connecticut; and Cyd Oppenheimer, New Haven, Connecticut,

        for Appellant/Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, and Stephen D. Ake, Senior Assistant Attorney General, Christina Z. Pacheco and Lisa Martin, Assistant Attorneys General, Tampa, Florida,

        for Appellee/Respondent