PER CURIAM.
Mark James Asay, a prisoner under sentences of death with an active death warrant, appeals the circuit court’s order denying his third successive motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habe-as corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.
*697 BACKGROUND
The underlying facts of this case have been previously set forth in this Court’s opinion on direct appeal. See Asay v. State (Asay I), 580 So.2d 610, 610-12 (Fla.), cert. denied, 502 U.S. 895, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991). A majority of the details described therein are accurate, with the following exceptions relating to Asay’s second victim. We have previously described the victim born Robert McDowell as “a black' man dressed as a woman.” McDowell was known to friends and neighbors as Renee Torres. Torres was identified at trial by everyone who testified as white and Hispanic. Renee Torres née Robert McDowell may have been either white or mixed-race, Hispanic but was not a black man. We regret our previous error.
After trial, Mark Asay was convicted of two counts of first-degree murder for which a jury voted nine to three to recommend death sentences. We affirmed the convictions and sentences in Asay I, 580 So.2d 610.[1] Asay’s sentences became final when the United States Supreme Court denied his petition for writ of certiorari on October 7, 1991. Asay v. Florida, 502 U.S. 895, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991).
We affirmed the denial of Asay’s initial motion for postconviction relief. Asay v. State (Asay II), 769 So.2d 974 (Fla. 2000).[2] We also denied Asay’s petition for a writ of habeas corpus, filed October 25, 2001.[3] *698 Asay v. Moore (Asay III), 828 So.2d 985, 989 n.8 (Fla. 2002).
We affirmed the denial of Asay’s successive motion for postconviction relief, in which he argued that Florida’s-capital sentencing scheme was unconstitutional pursuant to Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Asay v. State (Asay IV), 892 So.2d 1011 (Fla. 2004) (table). Additionally, Asay sought and was denied federal relief.[4] Asay v. Sec’y, Fla. Dep’t of Corr., Case No. 3:05-cv-00147-J-32PDB, 2014 WL 1463990 at *28 (N.D. Fla. Apr. 14, 2014).
On January 8,2016, Governor Rick Scott signed a death warrant scheduling Asay’s execution on March 17, 2016. On January 12, 2016, the United States Supreme Court issued its decision in Hurst v. Florida, — U.S. —, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016), holding, in relevant part, that sections 775.082(1) and 921.141(1)-(3), Florida Statutes (2010), were unconstitutional because “[tjhe Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose á sentence of death. A jury’s mere recommendation is not enough.” Id. at 619. Asay filed a petition for a writ of habeas corpus on January 19, 2016, and filed his second successive motion for postconviction relief on January 27, 2016.[5] The circuit court summarily de *699 nied all four claims and Asay’s motion for a stay of execution. Asay appealed and both cases were heard at Oral Argument on March 2, 2016, after which we stayed Asay’s execution.
On December 22,2016, we lifted the stay and issued an opinion denying postconviction relief. Asay v. State (Asay V), 210 So.3d 1 (Fla. 2016), petition for cert. filed, No. 16-9033 (U.S. Apr. 29, 2017). Asay sought a writ of certiorari in the United States Supreme Court on .April 29, 2017. The State filed its brief in opposition on July 3, 2017. The petition is still, pending.
Also on July 3, 2017, Governor Scott reset Asay’s execution for August 24, 2017. Asay filed his third successive postconviction motion with the fourth circuit, arguing: (1) that he was denied access to public records, (2) that the new lethal injection protocol is unconstitutional; (3) that the manner in which the execution was reset violated due process, and (4) that section 922.06 is unconstitutional. The circuit court denied Asay’s claims. This appeal follows.
ANALYSIS
Due Process
In this claim, Asay argues that the manner in which his execution was rescheduled violated his rights to due process. Asay also argues-that he has been denied due process throughout the proceedings because he was denied access' to public records, because he was not permitted a continuance to secure an expert witness, because he was not permitted to question certain witnesses, and because the circuit court denied his request to stay his execution.
As it relates to Asay’s rescheduled execution, the circuit court summarily denied this claim. The circuit court first found that the claim was not cognizable under rule 3.851 and “decline[d] to consider [Asay’s] argument as to why,' how, and when the'[Attorney General] requested the United States Supreme Court for an extension of time to file a brief.” The circuit court therefore found that there was no correlation between the Attorney General’s action and Asay’s due process rights; Finally, the circuit court found the claim without merit.
A defendant is entitled to an evi-dentiary hearing on a postconviction motion unless it is clear from the motion or record that the movant is not entitled to relief or the claim is legally insufficient. See Jackson v. State, 147 So.3d 469, 485 (Fla. 2014) (citing Valentine v. State, 98 So.3d 44, 54 (Fla. 2012)). Concluso'ry allegations are not sufficient and the defendant must establish a prima facie ease based on a legally valid claim. Id. If there is any doubt whether' the movant has made a facially sufficient claim, this Court will presume that an evidentiary hearing is required. Id. (quoting Walker v. State, 88 So.3d 128, 135 (Fla. 2012)).
As discussed in the next issue, Asay cannot demonstrate that he is entitled to relief on his claim that the rescheduling of the warrant violated his right to due process. In fact, it appears that Asay’s claim is actually a disagreement with the process that he is due as articulated by thé statute. Asay acknowledges in his next issue that the statute permits exactly what occurred, which means he has’ been afforded the process available. The circuit court thus correctly concluded that Asay’s claim was not cognizable under rule 3.851.
As it relates to the public records requests, the circuit courtfound that because the purpose of a.rule 3.851 motion “is to challenge the validity of [a] [defendant's underlying conviction and sentence of death,” the circuit court’s intermittent rulings did “not give rise to additional claims for attacking the underlying conviction and sentence.” Accordingly, the circuit court found the public records claim was not *700 cognizable in a motion for postconviction relief. The circuit court nevertheless considered the merits of the claim and determined that Asay’s claim was refuted by the record in several instances and otherwise without merit.
Florida Rule of Criminal Procedure 3.852(i)(2) requires production of public records upon a finding of the following:
(A) collateral counsel has made a timely and diligent search of the records repository;
(B) collateral counsel’s affidavit identifies with specificity those additional public records that are not at the records repository;
(C) the additional public records sought are either relevant to the subject matter of a proceeding under rule 3.851 or appear reasonably calculated to lead to the discovery of admissible evidence; and
(D) the additional records request is not overly broad or unduly burdensome.
See Valle v. State, 70 So.3d 530, 549 (Fla. 2011) (quoting Florida Rule of Criminal Procedure 3.852(i)(2)).
This Court has stated that “a defendant must show how the requested records relate to a colorable claim for post-conviction relief and good cause as to why the public records request was not made until after the death warrant was signed.” Tompkins v. State, 872 So.2d 230, 244 (Fla. 2003) (citing Glock v. Moore, 776 So.2d 243, 254 (Fla. 2001); Bryan v. State, 748 So.2d 1003, 1006 (Fla. 1999)). In Sims v. State, 753 So.2d 66, 70 (Fla. 2000), this Court made clear that while the language of the rule and statute provide for the production of records after a warrant has been signed, “this discovery tool is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief.” Accordingly, where a defendant cannot demonstrate that he or she is entitled to relief on a claim or that records are relevant or may reasonably lead to the discovery of admissible evidence, the trial court may properly deny a records request. See Pardo v. State, 108 So.3d 558 (Fla. 2012); Tompkins v. State, 994 So.2d 1072, 1090 (Fla. 2008); Valle, 70 So.3d at 547-49.
The disputed records relate to communications between the Attorney General and the Governor’s office regarding the rescheduling of Asay’s execution and manufacturer information for the drugs used in the lethal injection protocol. Because Asay cannot demonstrate that he is entitled to relief on claims related to these records, the circuit court properly summarily denied relief.
The circuit court’s rulings on Asay’s motion for a continuance and the State’s motion to exclude witnesses are reviewed for an abuse of discretion. Williams v. State, 209 So.3d 543, 556 (Fla. 2017). Asay has not demonstrated that the trial court abused its discretion in relation to either ruling. Asay’s continuance was requested in order to have his expert testify. The circuit court gave the witness the option to testify at the time convenient to him by any remote method he preferred: telephonieally or electronically. Asay’s expert was able to testify. The State’s motion to exclude witnesses who were members of the execution team is supported by statutory and case law. § 945.10(g), Fla. Stat. (2017); Muhammad v. State, 132 So.3d 176, 189 (Fla. 2013). Members of the execution team are protected from testifying. Accordingly, the circuit court properly ruled on these motions.
Lethal Injection Protocol
Asay argues that the State’s adoption of etomidate as the first drug in the lethal injection protocol places him at substantial risk of serious harm in violation of the Eighth Amendment. After an eviden- *701 tiary hearing, the circuit court found that Asay failed to establish sure or very likely risks of sufficiently imminent danger or a proposed alternative that is readily available. Because there is competent, substantial evidence to support the circuit court’s finding that Asay cannot meet the burden pronounced by the United States Supreme Court in Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) (plurality opinion) and Glossip v. Gross, — U.S. —, 135 S.Ct. 2726, 192 L.Ed.2d 761 (2015), Asay’s claim must fail.
In Glossip, the Supreme Court provided that a condemned prisoner must: (1) establish that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering and (2) identify a known and available alternative method of execution that entails a significantly less severe risk of pain. Glossip, 135 S.Ct. at 2737 (citing Baze, 553 U.S. at 50, 61, 128 S.Ct. 1520).
Four expert witnesses testified at the evidentiary hearing held on this issue. The State presented John Palmer, Associate Director of the Florida Department of Corrections; Dr. Daniel Buffington, a clinical pharmacologist; and Dr. Steven Yun, an anesthesiologist. Asay presented the testimony of an anesthesiologist, Dr. Mark Heath. These witnesses detailed the known effects of etomidate, how it would be used in the protocol, and how it has been used in medical practice.
The pharmacology of etomidate is described by the drug insert as follows:
Etomidate is a hypnotic drug without analgesic activity. Intravenous injection of etomidate produces hypnosis characterized by a rapid onset of action, usually within one minute. Duration of hypnosis is dose dependent but relatively brief, usually three to five minutes when an average dose of 0.3mg/kg is employed.
The insert also states, “The most frequent adverse reactions associated with use of intravenous etomidate are transient venous pain on injection and transient skeletal movements, including myoclonus.” Further, pain is described in the insert, stating:
Transient venous pain was observed immediately following intravenous injection of etomidate in about 20% of the patients, with considerable difference in the reported incidence (1.2% to 42%). This pain is usually described as mild to moderate in severity but it is occasionally judged disturbing. The observation of venous pain is not associated with a more than usual incidence of thrombosis or thrombophlebitis at the injection site. Pain also appears to be less frequently noted when larger, more proximal arm veins are employed and it appears to be more frequently noted when smaller, more distal, hand or wrist veins are employed.
The information in the inserts was confirmed in the testimony of both anesthesiologists. Even the defense expert, Dr. Heath, testified that most patients do not experience pain.
Based on the testimony heard during the evidentiary hearing and the record before this Court, Asay has not demonstrated that he is at substantial risk of serious harm. Indeed, the record before this Court demonstrates that Asay is at a small risk of mild to moderate pain. As the Supreme Court noted:
because it is settled that capital punishment is constitutional, it necessarily follows that there must by a constitutional means of carrying it out. And because some risk of pain is inherent in any method of execution, we have held that the Constitution does not require the avoidance of all risk of pain. After all, while most humans wish to die a pain *702 less death, many do not have that good fortune. Holding that the Eighth Amendment demands the elimination of essentially all risk of pain would effectively outlaw the death penalty altogether.
Glossip, 135 S.Ct. at 2732-33 (internal alterations and citations omitted).
Asay has also not identified a known and available alternative method of execution that entails a significantly less severe risk of pain. Asay’s alternatives have been previously rejected by this Court as speculative. See Correll v. State, 184 So.3d 478, 490 (Fla. 2015); Muhammad, 132 So.3d at 197; Valle, 70 So.3d 530.
Asay also argues that Florida’s continued use of a three-drug protocol instead of a one-drug protocol constitutes cruel and unusual punishment in light of evolving standards of decency. The circuit court denied this claim, stating that Asay “failed to establish that the current three-drug protocol presents a serious risk of needless suffering.” The circuit court did not err in denying this claim which has been previously rejected by this Court. See Muhammad, 132 So.3d at 197.
Section 922.06(2), Florida Statutes
Asay’s third claim is that Section 922.06, Florida Statutes, permits the Attorney General to exercise an unfair advantage over the warrant process after a court has entered a stay of execution. Asay’s claim is not about the Governor’s discretion in the warrant process and does not appear to have been previously addressed by this Court. Nevertheless, Asay is not entitled to relief on this claim because it is not cognizable in a postconviction motion filed pursuant to rule 3.851 and was properly summarily denied..
The circuit court summarily denied this claim. The circuit court’s order does not appear to address the constitutional argument and, instead, states that sections 922.052 and 922.06 “are merely rules outlining the procedures used to carry out a death sentence” that Asay has no right to challenge.
Florida Rule of Criminal Procedure 3.851 provides collateral relief from a death sentence or conviction, which Asay is not challenging. His argument is not that the Attorney General’s actions invalidate his sentence or the warrant. If Asay were challenging the warrant itself, this Court has previously stated that the statute does not grant death-sentenced inmates a right to challenge the issuance of a warrant. Henry v. State, 134 So.3d 938, 945 (Fla. 2014). Further, as it relates to the constitutionality of section 922.06, this Court has previously considered and rejected any such argument. See Abdool v. Bondi, 141 So.3d 529 (Fla. 2014); Muhammad, 132 So.3d at 197. This Court had also previously considered a challenge to the timing of a warrant and concluded that the Governor is required to follow the timing of the statute. Tompkins, 994 So.2d 1072. The fact that the statute does not give a time period in which the Attorney General must certify that a court has lifted a stay of execution may be an oversight by the Legislature, but is not a basis for Asay’s relief.
Habeas Petition
Asay’s petition nominally raises four claims attacking the constitutionality of his death sentences. However, these claims are, in essence, an Eighth Amendment attack on his sentences based on the nonunanimous verdicts using this Court’s decision in Hurst v. State, 202 So.3d 40 (Fla. 2016), cert. denied, — U.S. —, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017) and the Legislature’s revision of section 921.121, Florida Statutes, in response to this Court’s decision in Perry v. State, 210 So.3d 630 (Fla. 2016). In other words, Asay asserts that his death sentences cannot withstand Eighth Amendment scrutiny be *703 cause this Court’s refusal to grant him relief is arbitrary and capricious. Asay’s argument is not novel and has been previously rejected by this Court. Accordingly, Asay has not presented a basis for relief.
During Asay’s prior warrant proceedings, he challenged the constitutionality of his death sentence based upon the requirement of chapter 2016-13’s ten-to-two vote requirement. Asay filed his sqcond habeas petition on April 13, 2016, arguing that he should be entitled to relief pursuant- to chapter 2016-13, Laws of Florida, because his nine-to-three jury vote violated the requirement of a ten-to-two vote under the new law. The Court denied Asay’s second habeas petition in its opinion. Asay V, 210 So.3d at 11 (“We deny Asay’s petition based on our decision in Perry[,] that chapter 2016-13, Laws of Florida, is unconstitutional and based on our decision today that Hurst cannot be applied retroactively to Asay.”).
Asay’s present claim is based on chapter 2017-1, Laws of Florida, unlike his prior petition, which addressed chapter 2016-13. Asay argues that chapter 2017-1, Laws of Florida, creates a substantive right to a life sentence unless a jury unanimously recommends 'otherwise. Asay acknowledges that the new law is identical to chapter 2016-13, Laws of Florida, with the exception of the unanimous jury vote requirement. Despite Asay’s contention that this claim is based purely on chapter 2017-1, but for the title and jury vote requirement, this claim is identical to Asay’s previous claim in his petition for a writ of habeas corpus in case number SC16-628.[6]
Asay’s claims applying the retroactive application of Hurst v. State, and Chapter 2017-1, Laws of Florida, are controlled by this Court’s decision in Hitchcock v. State, No. SC17-445. Hitchcock, SC17-445, 226 So.3d at 217, 2017 WL 3431500, at *1 (“We have consistently applied our- decision in Asay V, denying the retroactive application of Hurst v. Florida as interpreted in Hurst v. State to defendants whose death sentences were final when the Supreme Court decided Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).”)
Because Asay has, not presented a novel claim for this Court’s consideration, we deny Asay’s petitions
CONCLUSION
For the foregoing reasons, we affirm the circuit court’s denial of Asay’s third successive motion for postconvietion relief and deny Asay’s petition for a writ of habeas corpus. Because wé find that Asay is not entitled to relief, we deny his motion for a stay of execution and his application for a stay of execution. No’ rehearing will be entertained by this Court and the mandate shall issue immediately.
It is so ordered.
LABARGA, C.J., and QUINCE, POLSTON, and.LAWSON, JJ„ concur.
LEWIS and CANADY, JJ., concur in result.
PARIENTE, J., dissents with an opinion.

. Asay raised seven issues on direct appeal: (1) the trial court erred by allowing racial prejudice to be injected into the trial; (2) the trial court erred in failing to advise Asay of his right to represent himself and'to conduct an inquiry when Asay asked to discharge court-appointed counsel; (3) the trial'court erred in denying Asay’s pro se motion for continuance of the penalty phase of the trial to enable him to secure additional witnesses; (4) the prosecution improperly diminished the jury’s role in sentencing; (5) the trial court judge erred by failing to grant his motion for judgment of acquittal on count I of the indictment charging him with the first-degree premeditated murder of Robert Lee Booker; (6) the trial court erred in finding the McDowell murder was committed in a cold, calculated, and premeditated manner; and (7) Asay's death sentence was disproportionate. Asay, 580 So.2d at 612-14.

. Asay raised six issues on appeal:. (1) judicial bias during the trial and postconviction proceedings resulted in a denial of “a fair and impartial tribunal throughout his proceedings in violation of his due process rights”; (2) the trial court improperly limited the scope of the evidentiary hearing by (a) limiting the testimony of some of Asay’s siblings concerning mitigating evidence not presented during the sentencing phase, (b) limiting the scope of Asay’s examination of his trial counsel regarding his knowledge of prior inconsistent statements of key witnesses, and (c) refusing to hear the testimony of Thomas Gross recanting his trial testimony; (3) ineffectiveness of counsel during the guilt phase for (a) failing to adequately impeach the State’s key witnesses, (b) failing to present a voluntary intoxication defense, and (c) failing to rebut the State's arguments that he committed the crime due to his racial animus; (4) ineffectiveness of counsel during the penalty phase for (a) failing to investigate and present statutory mitigating evidence that he was acting under extreme emotional distress and his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, and (b) failing to present nonstatutory mitigating evidence' of physicál and emotional abuse and poverty during his childhood, alcohol abuse and his history of "huffing” inhalants; (5) the trial court improperly summarily denied several claims; and (6) cumulative error. Asay, 769 So.2d at 978-89.

. Asay raised the following claims: (1) ineffective assistance of appellate counsel in failing to argue on appeal that Asay was absent during critical stages of the proceedings; (2) Asay’s death sentences are unconstitutional because Asay was impermissibly limited from presenting mitigation, the trial court failed to consider and weigh mitigation, and the prosecutor made impermissible arguments regarding aggravation; (3) ineffective assistance of *698 appellate counsel for failing to raise on appeal the trial court's failure to give a requested instruction on CCP; (4) ineffective assistance of appellate counsel for failing to raise on appeal penally phase instructions that improperly shifted the burden of proof regarding the appropriateness of a life sentence; and (5) the unconstitutionality of Florida's capital sentencing statute and instructions given pursuant thereto.

. Asay raised the following eleven claims in the United States District Court for the Northern District of Florida: (1) Asay's rights under the Sixth Amendment to tire United States Constitution were violated when, during the trial, Asay informed the trial court that he wished to terminate the services of defense counsel, yet the trial court neither provided substitute counsel nor advised Asay that he had the right to proceed pro se; (2) Asay received ineffective assistance of counsel because counsel delegated the investigation of Asay’s case to an investigator and failed to supervise or follow up on that investigator’s work product; (3) Asay received ineffective assistance of counsel because counsel failed to meáningfully consult with Asay, failed to obtain and use relevant information about Asay, and dropped all defense preparation when he was informed that Asay had confessed to the defense investigator; (4) Asay received ineffective assistance of counsel because counsel' failed to meaningfully prepare for trial; (5) Asay received ineffective assistance of counsel because counsel believed that a first-degree murder conviction in Asay's case was impossible and therefore failed to prepare for the trial and penalty phase, and he labored under the misconception that there could be no defense if Asay confessed; (6) Asay was denied a fair trial when racial evidence and argument tainted the trial process; (7) a State witness, Thomas Gross, admitted after trial that his testimony (that Asay was a racist) was a lie, that his testimony was coached, and the prosecutor suborned this conduct; (8) Asay received ineffective assistance of counsel because counsel advised Asay not to testify on his own behalf at trial and at the Spencer hearing; (9) Asay received ineffective assistance of counsel because counsel conceded Asay's guilt during closing argument; (10) Florida's capital sentencing scheme is unconstitutional under Ring; and (11) defense counsel failed to convey an offer of a plea to second-degree murder.

. Asay raised the following four grounds for relief: (1) newly discovered evidence exists that diminishes the reliability of firearms identification evidence presented at trial; (2) Asay's due process and equal protection rights were violáted because he did not have state counsel at the time the Governor signed his death warrant and for the previous 10 years; (3) Asay is entitled to relief under Hurst v. Florida, and that Hurst v. Florida applies retroactively so that the execution should be stayed; and (4) the State violated Brady v. Maryland, 373 U.S. 83, 83 (S.Ct. 1194, 10 L.Ed.2d 215 1963) for suppressing numerous documents Asay recently received.

. In his motion for rehearing, Asay argued that he was not presented an opportunity to make an argument based on Hurst v. State to this Court. We denied rehearing. Asay v. State, 2017 WL 431741 (Fla. Feb. 1, 2017).