# Supreme Court of Florida

_____

No. SC2025-0371

_____

**MICHAEL A. TANZI,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC2025-0372

_____

**MICHAEL A. TANZI,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

_____

No. SC2025-0424

_____

**MICHAEL A. TANZI,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS, et al.,**
Respondents.

April 1, 2025

PER CURIAM.

Michael A. Tanzi has been sentenced to death for the murder of Janet Acosta. On March 10, 2025, Governor Ron DeSantis signed a death warrant scheduling Tanzi's execution for April 8, 2025. Tanzi unsuccessfully sought relief in the circuit court and now appeals. We have jurisdiction. *See* art. V, §§ 3(b)(1), (7), (9), Fla. Const. We affirm. We also deny Tanzi's habeas petition, motions for stay of execution, and request for oral argument. We dismiss Tanzi's emergency petition to invoke this Court's all writs jurisdiction.

**I**

On April 25, 2000, during her lunch break, Acosta sat in her van parked in Miami, reading a book. *Tanzi v. State* (*Tanzi I*), 964 So. 2d 106, 110 (Fla. 2007). Tanzi approached Acosta's van and attacked her. *Id.* Threatening Acosta with a razor blade, he abducted her. *Id.* After driving to Homestead with Acosta in the van, Tanzi bound, gagged, and sexually battered her. *Id.* Tanzi

- 2 -

continued to drive until he reached Cudjoe Key, where he fatally strangled Acosta and disposed of her body. *Id.* at 111.

Two days later, police located Tanzi in Key West with Acosta's van, after her friends and coworkers had reported her missing. *Id.* Tanzi confessed to the crimes and guided police to the spot where he had discarded Acosta's body. *Id.* We offered a more detailed account of these facts on direct appeal. *Id.* at 110-11.

Shortly before trial, Tanzi pled guilty to first-degree murder, carjacking, kidnapping, and armed robbery. *Id.* at 111. After a penalty-phase trial, the jury unanimously recommended a sentence of death, which the circuit court imposed. *Id.* On direct appeal, this Court affirmed Tanzi's sentence. *Id.* at 121. The sentence became final when the United States Supreme Court denied certiorari review. *Tanzi v. Florida*, 552 U.S. 1195 (2008).

Tanzi has since unsuccessfully sought relief in both state and federal courts. Tanzi's first motion for postconviction relief under Florida Rule of Criminal Procedure 3.851 was denied by the circuit court, and this Court affirmed. *See Tanzi v. State* (*Tanzi II*), 94 So. 3d 482, 497 (Fla. 2012). Tanzi's petition for state habeas relief was also denied. *See id.* As a petitioner in *Abdool v. Bondi*, 141 So. 3d

529 (Fla. 2014), Tanzi sought to invoke this Court's mandamus and all writs jurisdiction to declare portions of the Timely Justice Act of 2013 unconstitutional and enjoin their enforcement. Among other claims, he challenged the constitutionality of section 922.052(2)(b), Florida Statutes (2013), which required the Governor, after issuing a warrant, to "direct the warden to execute the sentence within 180 days." *Abdool*, 141 So. 3d at 543. This Court denied relief. *Id.* at 555. Tanzi then petitioned for federal habeas relief, which the district court denied, and the United States Court of Appeals for the Eleventh Circuit affirmed the denial. *See Tanzi v. Sec'y, Fla. Dep't of Corr.* (*Tanzi III*), 772 F.3d 644, 650, 662 (11th Cir. 2014), *cert. denied*, 577 U.S. 865 (2015).

In 2017, Tanzi sought postconviction relief under *Hurst v. Florida*, 577 U.S. 92 (2016), and *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020). *See Tanzi v. State* (*Tanzi IV*), 251 So. 3d 805 (Fla. 2018). This Court denied relief, finding the *Hurst* error in Tanzi's case harmless beyond a reasonable doubt. *Id.* at 806. The United States Supreme Court denied certiorari review. *Tanzi v. Florida*, 586 U.S. 1004 (2018).

Tanzi filed his third motion for postconviction relief after the Governor signed his death warrant. In the motion, he asserted three claims: (1) the compressed timeframe for Tanzi's post-warrant postconviction procedures and the denial of access to additional public records deprives him of a full and fair postconviction proceeding in violation of his federal and state due process rights; (2) Florida's lethal injection protocols, as applied to Tanzi, a morbidly obese man suffering from various unresolved medical conditions, raise a substantial risk of severe pain constituting cruel and unusual punishment in violation of his federal and state constitutional rights; and (3) the Governor's authority to determine the timing of death warrants and the length of warrant litigation is unconstitutional. After holding a *Huff*[1] hearing, the circuit court summarily denied relief on all claims. The circuit court also denied his motions for additional public records and a stay of execution.

---

1. In *Huff v. State*, 622 So. 2d 982, 983 (Fla. 1993), we held that a trial court must hold a hearing on an initial postconviction motion to determine whether an evidentiary hearing is required. This requirement also applies to successive postconviction motions under Florida Rule of Criminal Procedure 3.851(f)(5)(B). *See Taylor v. State*, 260 So. 3d 151, 157 (Fla. 2018); *see also Owen v. State*, 364 So. 3d 1017, 1022 n.12 (Fla. 2023).

Tanzi now appeals the denial of his postconviction motion, raising four arguments. He also seeks habeas relief and requests oral argument.

## II

We have said:

> Summary denial of a successive postconviction motion is appropriate if the motion, files, and records in the case conclusively show that the movant is entitled to no relief. We review the circuit court's decision to summarily deny a successive rule 3.851 motion de novo, accepting the movant's factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief.

*Owen*, 364 So. 3d at 1022-23 (cleaned up). Tanzi is entitled to no relief.

## A

In his first argument on appeal, Tanzi claims that the truncated warrant period and the denial of his public records requests deprived him of his due process rights. The circuit court summarily denied this claim, finding no relief warranted as a matter of law. We agree.

The warrant litigation schedule does not violate Tanzi's due process rights. "Due process requires that a defendant be given

- 6 -

notice and an opportunity to be heard on a matter before it is decided." *Asay v. State*, 210 So. 3d 1, 27 (Fla. 2016) (citing *Huff*, 622 So. 2d at 983). This Court has previously rejected the argument that a 30-day "compressed warrant litigation schedule" denies a capital defendant "his rights to due process." *See Barwick v. State*, 361 So. 3d 785, 789 (Fla. 2023). Tanzi has not shown how the warrant schedule denied him notice or an opportunity to be heard. Thus, the circuit court rightly denied his claim as it pertained to the compressed schedule.

As for Tanzi's public records requests, we review the denial of such requests for abuse of discretion. *See Cole v. State*, 392 So. 3d 1054, 1065 (Fla. 2024). The "discovery tool" of rule 3.852 "is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief." *Id.* at 1066 (quoting *Asay v. State*, 224 So. 3d 695, 700 (Fla. 2017)). Thus, such requests must "show how the requested records relate to a colorable claim for postconviction relief and good cause as to why the public records request was not made until after the death warrant was signed." *Id.* (quoting *Dailey v. State*, 283 So. 3d 782, 792 (Fla. 2019)).

Here, Tanzi has not shown that his requests are related to a colorable claim for postconviction relief, nor has he established good cause for failing to raise them until after the Governor signed the death warrant. Instead, Tanzi claims that the rationale of *Cole* only applies to requests made under rule 3.852(i). He argues that he made his requests under rule 3.852(h)(3), so the circuit court should have granted them.

However, rule 3.852(h) does not apply to Tanzi. That rule is limited to "Cases in Which Mandate was Issued Prior to Effective Date of Rule." Fla. R. Crim. P. 3.852(h). As subdivisions (h)(1) and (h)(2) demonstrate, that date is October 1, 1998. *See id.*; *see also Jimenez v. State*, 265 So. 3d 462, 470 (Fla. 2018) ("[T]he provisions of rule 3.852(h) . . . apply to cases like [the defendant's], in which the mandate affirming the conviction and sentence of death was issued prior to rule 3.852's effective date of October 1, 1998."). The trial court sentenced Tanzi to death on April 11, 2003. We affirmed his conviction and sentence on May 10, 2007, and issued a mandate on September 12, 2007. The United States Supreme Court denied certiorari on February 19, 2008, formally concluding Tanzi's direct appeal. *See Tanzi v. Florida*, 552 U.S. 1195 (2008).

- 8 -

Tanzi's claim is thus outside of the scope of rule 3.852(h), and he is not entitled to records under rule 3.852(h).

Even if rule 3.852(h) did apply, Tanzi cannot distinguish his records requests from the requests in *Cole.* There, the capital defendant attempted to obtain additional records, not just under rule 3.852(i), but also rule 3.852(h)(3).[2] *Cole*, 392 So. 3d at 1065-66. This Court held that the circuit court did not abuse its discretion in denying the requests. *Id.* at 1066. We said, for both the defendant's rule 3.852(i) and 3.852(h)(3) requests, that the defendant's "records requests do not relate to a colorable claim for postconviction relief," and his "argument in this regard is foreclosed by precedent." *Id.*

For these reasons, rule 3.852(h)(3) does not entitle Tanzi to the public records he requested, and the circuit court did not abuse its discretion or violate any of his due process rights in reaching that conclusion.

---

2. The mandate for the defendant in *Cole* was issued before October 1, 1998, so he fell within the scope of rule 3.852(h). *See* 392 So. 3d at 1058-59.

- 9 -

## B

Pivoting from the effect of the warrant period on his due process rights, Tanzi next asserts that the circuit court's denial of his public records requests violates his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution. He argues that the circuit court should have granted his records requests made pursuant to rule 3.852(h)(3) and 3.852(i).

We have already explained why Tanzi is not entitled to records under rule 3.852(h)(3). As for rule 3.852(i), Tanzi acknowledges that precedent forecloses his argument regarding records requests for Florida's lethal injection procedures. *See, e.g.*, *Dailey*, 283 So. 3d at 792 ("Because we have upheld the constitutionality of the current lethal injection protocol, such records are unlikely to lead to a colorable claim for relief." (citation and internal quotation marks omitted)). While Tanzi asks us to reconsider this precedent, Tanzi has not demonstrated that the precedent is "clearly erroneous." *See Poole*, 297 So. 3d at 507. Further, this Court has recently declined similar requests, and we stand by those decisions. *See, e.g., Cole*, 392 So. 3d at 1066 ("[W]e reject Cole's argument to the extent he

- 10 -

suggests we should recede from that precedent."). The circuit court did not abuse its discretion in denying Tanzi's requests.

## C

Tanzi argues that administering Florida's lethal injection protocol to him would be unconstitutional due to his present medical conditions. The circuit court summarily denied this claim, finding it untimely and meritless, in denying Tanzi's motion to vacate judgment of conviction and sentence of death. We agree.

Florida Rule of Criminal Procedure 3.851(d)(1) requires that "[a]ny motion to vacate judgment of conviction and sentence of death shall be filed by the defendant within 1 year after the judgment and sentence become final." The circuit court found that Tanzi's medical conditions were present as early as November 2009. Tanzi does not dispute this finding, and he filed his motion well after the one-year deadline. Tanzi does not suggest that any exceptions apply in this case. *See* Fla. R. Crim. P. 3.851(d)(2)(A)-(C).[3] So Tanzi's claim is untimely. *See also Cole*, 392 So. 3d at

---

3. The rule states:

- 11 -

1064 (rejecting a method-of-execution claim as untimely because the defendant "failed to raise any argument related to the method of execution until after the Governor signed a death warrant").

The circuit court also correctly determined that Tanzi's claim is meritless. Successfully challenging a method of execution requires that a defendant "(1) establish that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering and (2) identify a known and available alternative method of execution that entails a significantly less severe risk of pain." *Asay*, 224 So. 3d at

---

(2) No motion shall be filed or considered pursuant to this rule if filed beyond the time limitation provided in subdivision (d)(1) unless it alleges:

(A) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, or

(B) the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively, or

(C) postconviction counsel, through neglect, failed to file the motion.

Fla. R. Crim. P. 3.851(d).

701 (citing *Glossip v. Gross*, 576 U.S. 863, 877 (2015)). Under the first prong of this test, the question is not merely whether any pain is inflicted, for "the Eighth Amendment 'does not demand the avoidance of all risk of pain in carrying out executions.' " *Bucklew v. Precythe*, 587 U.S. 119, 134 (2019) (quoting *Baze v. Rees*, 553 U.S. 35, 47 (2008)). Rather, "[t]he Eighth Amendment does not come into play unless the risk of pain associated with the State's method is 'substantial when compared to a known and available alternative.' " *Id.* (quoting *Glossip*, 576 U.S. at 878).

The circuit court was right that Tanzi cannot make that showing. This Court has repeatedly upheld Florida's lethal injection protocol, including the etomidate protocol. *See, e.g.*, *Asay*, 224 So. 3d at 700-02 (rejecting a constitutional challenge to Florida's "adoption of etomidate as the first drug in the lethal injection protocol"); *Cole*, 392 So. 3d at 1064-65 (noting that the "etomidate protocol . . . includes safeguards to ensure the condemned is unconscious throughout the execution" (citations omitted)). Additionally, this Court has considered and rejected similar arguments based on obesity and IV procedures. *See Schwab v. State*, 995 So. 2d 922, 927 (Fla. 2008) ("Being pricked

numerous times in the course of having an IV inserted is not cruel and unusual punishment, however uncomfortable it may be."); *Grossman v. State*, 5 So. 3d 668 (Fla. 2009) (unpublished table decision) (affirming the circuit court's denial of a capital defendant's claim that "his obesity will put him at risk of a difficult, painful and botched execution" since "the DOC execution procedures . . . do take into consideration the individual physical attributes of each inmate and provide for individualized procedures in light of any health concerns such as obesity" (citation omitted)).

Even if Tanzi's claims satisfied the first prong of the test to which we subject claims like his, he has failed to "identify a known and available alternative method of execution that entails a significantly less severe risk of pain." *Asay*, 224 So. 3d at 701 (citing *Glossip*, 576 U.S. at 877). Such an alternative method must be "feasible, readily implemented, and in fact significantly reduce[] a substantial risk of severe pain." *Glossip*, 576 U.S. at 877 (quoting *Baze*, 553 U.S. at 52). Tanzi has not shown how either of his two proposed alternate methods, lethal gas and the firing squad, could be "readily implemented," or in fact significantly reduces the substantial risk of severe pain, given the physical conditions he

describes.  Therefore, the circuit court rightly denied relief on this claim.

**D**

Tanzi contends that the Governor's authority to determine the timing of a death warrant, and thus the length of warrant litigation, unconstitutionally empowers him to control the availability and reliability of judicial relief from his own unconstitutional conduct. The circuit court below summarily denied this claim, finding it procedurally barred.  We agree.

We have long recognized the Governor's authority and discretion when signing death warrants.  *See, e.g.*, *Ferguson v. State*, 101 So. 3d 362, 366 (Fla. 2012) (affirming the circuit court's rejection of a claim "that the Governor's discretion is 'unfettered power' to determine the length of pre-execution incarceration and is unconstitutional"); *Valle v. State*, 70 So. 3d 530, 551 (Fla. 2011) (reiterating this Court's hesitation to "second-guess the Governor's decision in determining when to sign [a] death warrant" (emphasis omitted)).  And, as discussed above, this Court has previously rejected similar constitutional arguments attacking the compressed warrant litigation schedule.  *See Barwick*, 361 So. 3d at 789.

Moreover, years ago, we rejected Tanzi's challenge to the constitutionality of the statute allowing the Governor to "direct the warden to execute the sentence within 180 days" after a death warrant is signed. *Abdool*, 141 So. 3d at 543. Here, Tanzi has made no new challenge to the statute, nor has Tanzi made any argument that the Governor has violated the requirements of section 922.052(2)(b), Florida Statutes (2024). The Governor has set Tanzi's execution "within 180 days, at a time designated in the warrant" as required by the statute. *See id.* Thus, the circuit court properly denied Tanzi's third claim.

**III**

In his habeas petition, Tanzi claims that his death sentence is unconstitutional under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution in light of *Erlinger v. United States*, 602 U.S. 821 (2024). Tanzi argues that his rights were violated because the jury did not make findings necessary to impose death, including the existence of sufficient aggravation and the insufficiency of mitigation to overcome aggravation. Further, Tanzi says that, after *Erlinger*, *Davis v. State*, 207 So. 3d 142 (Fla. 2016), and its progeny—including *Tanzi IV*—are no longer good law.

First, while presented as an *Erlinger* claim, what Tanzi really raises are repackaged versions of his *Apprendi*, *Ring*, and *Hurst* arguments.[4] As Tanzi acknowledges in his petition, he has raised these arguments before, and we have rejected them. *See Tanzi I*, 964 So. 2d at 112 n.2; *Tanzi IV*, 251 So. 3d at 805-06. Indeed, in *Tanzi IV*, we denied relief on the core argument he raises again here: that the trial judge instead of a jury made the factual findings necessary for his death sentence. *See* 251 So. 3d at 805-06.

---

4. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *Ring v. Arizona*, 536 U.S. 584, 609 (2002) (holding that any "aggravating circumstance necessary for imposition of the death penalty" must "be found by a jury" rather than the sentencing judge); *Hurst v. Florida*, 577 U.S. at 98 (holding that Florida's capital sentencing scheme violated *Ring* because it did "not require the jury to make the critical findings necessary to impose the death penalty" but rather required "a judge to find these facts"); *Hurst v. State*, 202 So. 3d at 57 (holding that "before the trial judge may consider imposing a sentence of death, the jury in a capital case must unanimously and expressly find all the aggravating factors that were proven beyond a reasonable doubt, unanimously find that the aggravating factors are sufficient to impose death, unanimously find that the aggravating factors outweigh the mitigating circumstances, and unanimously recommend a sentence of death").

Second, *Erlinger* did not overrule *Davis* or *Tanzi IV*. *Davis* held that when a jury "unanimously f[inds] all of the necessary facts for the imposition of death sentences by virtue of its unanimous recommendation," that is "precisely what we determined in *Hurst* to be constitutionally necessary to impose a sentence of death." 207 So. 3d at 175. Tanzi claims this holding is irreconcilable with *Erlinger*. He argues that an advisory jury is incapable of checking governmental power and is thus unconstitutional. *Erlinger*, Tanzi says, means that even unanimous recommendations are void because they cannot substantively limit executive and judicial power.

If Tanzi is correct, then a unanimous, non-advisory jury would be necessary to impose a death sentence. But in *Poole*, this Court held that

> our state constitution's prohibition on cruel and unusual punishment, article I, section 17, **does not require a unanimous jury recommendation—or any jury recommendation**—before a death sentence can be imposed. . . . Binding Supreme Court precedent in *Spaziano* holds that the Eighth Amendment **does not require a jury's favorable recommendation before a death penalty can be imposed**.

297 So. 3d at 505 (emphasis added) (footnote omitted) (citing

*Spaziano v. Florida*, 468 U.S. 447, 464-65 (1984)).  More recently, in

*Ford v. State*, this Court denied a capital defendant's attempt to

bring a *Hurst* claim by relabeling it as an *Erlinger* claim.  50 Fla. L.

Weekly S22, S25 (Fla. Feb. 7, 2025) (rejecting capital defendant's

argument that "*Erlinger* is a reminder that [his] death sentences are

contrary to *Hurst* [*v. Florida*] and *Hurst v. State*").  Thus, this Court

has rejected the legal principles upon which Tanzi relies to assail

*Davis* and *Tanzi IV*.  His claim is both meritless and procedurally

barred.  *See Barwick*, 361 So. 3d at 793 ("[U]sing 'a different

argument to relitigate the same issue' . . . is inappropriate."

(quoting *Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990))).

Third, *Erlinger* does not apply to this case, which is before us

now on postconviction review.  As this Court explained in *Ford*:

> *Erlinger* does not apply to this case.  It involved the federal Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), which imposes enhanced, lengthy, mandatory minimum prison terms on certain defendants who have committed three violent felonies or serious drug offenses on separate occasions.  *Erlinger*, 602 U.S. at 825.  The question presented in *Erlinger* was "whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a unanimous jury to make that

- 19 -

determination beyond a reasonable doubt." *Id.* The Court concluded that a jury must resolve the "ACCA's occasions inquiry unanimously and beyond a reasonable doubt." *Id.* at 835. But *Erlinger* was a direct-appeal case—not a postconviction case . . . and it involved required jury findings regarding an element.

50 Fla. L. Weekly at S24-25; *see also Hurst v. Florida*, 577 U.S. at 97 (defining an "element" that must be submitted to the jury as "any fact that exposes the defendant to a greater punishment than that authorized by the jury's guilty verdict" (citation and internal quotation marks omitted)). Because of "these fundamental distinctions, it is clear that *Erlinger* provides no support for vacating" Tanzi's death sentence. *Ford*, 50 Fla. L. Weekly at S24-25.

Therefore, we deny Tanzi's habeas petition.

## IV

On March 27, 2025, Tanzi filed an emergency petition to invoke this Court's all writs jurisdiction. In it he seeks, as extraordinary relief, to override the determination of corrections officers that he currently does not have a medical need for a wheelchair. The State says those officers have sought to treat Tanzi's complaints of pain upon walking with medications that he

- 20 -

has accepted—and that have worked—in the past; but since March 15, 2025, Tanzi has declined these medications. And the State has submitted the declaration of a clinical advisor that Tanzi does not have a medical need for a wheelchair in lieu of ambulating.

The "all writs" provision in article V, section 3(b)(7) is not a "separate source of original or appellate jurisdiction." *Williams v. State*, 913 So. 2d 541, 543 (Fla. 2005). Tanzi does not articulate a basis upon which acting on this emergency petition, which would otherwise be subject to dismissal for a failure to exhaust administrative remedies, is necessary as an aid to the Court in the complete exercise of its jurisdiction. Nor can we say that Tanzi has a clear legal right to whatever medical treatment or accommodation he requests of corrections personnel. *Cf. Huffman v. State*, 813 So. 2d 10, 11 (Fla. 2000) ("In order to be entitled to a writ of mandamus the petitioner must have a clear legal right to the requested relief, the respondent must have an indisputable legal duty to perform the requested action, and the petitioner must have no other adequate remedy available.").

**V**

We affirm the summary denial of Tanzi's motion for postconviction relief, along with the circuit court's denial of his motion to access additional public records. We deny his habeas petition. As a result, we also deny his motions for a stay of execution. We dismiss his emergency petition to invoke this Court's all writs jurisdiction. We do not require oral argument and will entertain no petition for rehearing. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

An Appeal from the Circuit Court in and for Monroe County,
    Timothy J. Koenig, Judge
    Case No. 442000CF000573000AKW
And Original Proceedings – Habeas Corpus and All Writs

Suzanne Keffer, Capital Collateral Regional Counsel, Paul Kalil, Assistant Capital Collateral Regional Counsel, Todd Scher, Assistant Capital Collateral Regional Counsel, and Michael Cookson, Staff Attorney, Office of Capital Collateral Regional Counsel, South Region, Fort Lauderdale, Florida,

    for Appellant/Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, Scott Browne, Chief Assistant Attorney General, Christina Z. Pacheco,

Senior Assistant Attorney General, and Joshua E. Schow, Assistant Attorney General, Tampa, Florida,

      for Appellee/Respondent State of Florida

Ricky D. Dixon, Secretary, Florida Department of Corrections, and Kristen J. Lonergan, Executive Senior Attorney, Florida Department of Corrections, Tallahassee, Florida,

      for Respondent Florida Department of Corrections